## DEARING, SINK & Co. v. SMITH & WRIGHT.

1. The appearance of a defendant will dispense with the service of process upon him.

2. The recital in a judgment that the defendant *says nothing in bar or preclusion of the plaintiff's action*, amounts to the withdrawal of the pleas which he had previously filed.

3. The statute having dispensed with proof that individuals suing as a firm were partners, unless the fact is put in issue by plea in abatement; where the making a promissory note is denied, by a party charged as a member of a partnership, the same may be read to the jury without any additionhl proof, and then its genuineness, or legal obligation, must be shown.

4. On a demurrer to evidence all reasonable presumptions are made against the party demurring ; and the Court is not bound to render judgment in conformity with what should have been the verdict of the jury, *but with what it legally could have been.*

5. Where two persons named D. were sued as partners with S one of them with S. submitted to a judgment by *nil dicit*, and the other denied making the note sued on ; on the trial of the cause a witness stated that " he had always understood that Mr. D. was a member of the firm,"—*Held*, that this evidence was sufficient on a demurrer to evidence to authorize the inference that the Mr. D. who had pleaded was the one to whom the witness referred.

6. Where an objection is made to the competency of testimony *en masse*, if part of it is admissible, the Court, without undertaking to distinguish it, may overrule the objection in *toto*.

7. When some of the defendants suffer judgment by default, and one of them pleads to issue, no judgment should be entered against the others until the jury have returned their verdict, then it should be entered jointly against all ; but if a judgment is rendered against the former, and after verdict a judgment in continuation of the entry, is rendered against the latter, it will be considered as a mere clerical misprision amendable under the act of 1824, " to regulate pleadings at common law."

WRIT of Error to the County Court of Tuscaloosa.

The defendants in error brought an action of *assumpsit* against the plaintiffs on a promissory note for the sum of one hundred and ninety-four dollars and seventy-five cents, dated the 20th December, 1838, and payable four months after date, at the Bank of the State of Alabama. The writ is returned executed on two of the defendants, to wit: James H. Dearing and Philip J. Sink; as to the other, Wiley J. Dearing, there is no return, but on the face of the process, as well as in the declaration, they are all described as copartners and merchants, trading under the style of Dearing, Sink & Co.

Sink appeared and pleaded, *non assumpsit*, failure of consideration, payment and set-off. James H. Dearing pleaded that he did not make or execute the note declared on, nor did he authorize any other person to make the same for him; which plea was duly verified by affidavit.

A judgment by *nil dicit* is rendered against Sink and W. J. Dearing, for the amount of the note, with interest and costs, and execution therefor directed to issue. Immediately following which, and in continuation thereof, is a judgment rendered against James H. Dearing for the amount of the note, with interest and costs, on a demurrer to the plaintiff's evidence.

The evidence demurred to is—

1. The deposition of F. P. Betts, of New Jersey, who states that he always understood that Dearing, Sink & Company were copartners in business. On the 17th day of September, 1835, Dearing, Sink & Co. purchased of Smith & Wright a bill of goods, and gave in payment of the same their note due 31st August, 1836, for six hundred and sixty dollars and fifty cents. A part of that note has been paid, leaving a balance of one hundred and ninety-four dollars and seventy-five cents, due to Smith & Wright on the 20th April, 1839, for which balance Dearing, Sink & Co. gave their note, which is still unpaid. The note last given was signed by Mr. Sink, in Tuscaloosa, on the 20th day of December, 1838, as near as the witness can recollect in the presence of Mr. Dearing.

2. The plaintiffs' counsel also testified that he had been informed by Mr. Sink, one of the defendants, that the note in question was signed by him, and that he several times promis-

55

ed to pay it. Witness had always understood that Dearing, Sink & Co. were partners, but did not know whether there had been a dissolution of the firm. Mr. Dearing he had understood was a partner.

3. The note declared, which is as follows:

*Tuscaloosa, 20th Dec.* 1838.

$194 75

Four months after date, we promise to pay Smith & Wright, or order, one hundred and ninety-four 75-100 dollars, for value received, negotiable and payable at the State Bank of Alabama, at Tuscaloosa, being a balance due us from the old house of Dearing, Sink & Co. Due 20|23 April, 1839.

DEARING, SINK & Co.

It appears from the bill of exceptions in the record, that the defendants below excepted to the reading of the deposition adduced by the plaintiffs, as well as the testimony of the plaintiffs' counsel, and the promissory note, all of which was set out in the demurrer to evidence.

HUNTINGTON, for the plaintiffs in error. The judgment entry it is true is joint against all the defendants, but the damages are severed. The correct practice is, where some of the defendants plead and others do not, to assess the damages by the jury who tries the issues; there is an entry of a stay of judgment against the latter until the jury return their verdict upon the issues. [Tidd's Practice, 670–1.] Such is the English practice, but under our statute the clerk may assess damages against those not pleading where the cause of action is a promissory note, &c. Here, although there is but one entry, yet executions may so issue as to recover a double satisfaction, viz: against W. J. Dearing and Sink, and also against J. H. Dearing. Such a judgment cannot be sustained.

General reputation is inadmissible to establish the fact of partnership. [Carter, Hogan and Plowman v. Douglass, 2 Ala. Rep. 499; McPherson v. Rathbone, 11 Wend. Rep. 96; Holliday v. McDougal, 20 Wend. Rep. 81; 22 Wend. Rep. 264; Whitney v. Sterling, 14 John. Rep. 215; Gowan v. Jackson, 20 id. 176; Bryden v. Taylor, 2 H. & Johns. Rep. 396; Brown v. Crandall, 11 Conn. Rep. 92; Goddard v. Pratt, 16 Pick. Rep. 412, 433.]

Dearing, Sink & Co. v. Smith & Wright.

The. evidence of the witnesses was insufficient, and the note was inadmissible.   [Bailey on Bills, 492-3-4; Powell v. Brown, 3 Johns. Rep. 104; Chauvin v. Labarge, 1 Missouri Rep. 556; Clark v. Small, 6 Yerger. Rep. 418; McGregor, Darling & Curtis v. Cleaveland, 5 Wend. Rep. 475; Roberts v. Rowan & Co. 2 Harrington's Rep. 314; Bell v. Rhea, Conner & Co. 1, Ala. Rep. N. S. 83; Lewis v. Post & Main, id. 65; Mauldin v. Branch Bank at Mobile, 2 id. 502.]

He also cited Fowlks & Co. v. Baldwin, Kent & Co. 2 Ala. Rep 705; Catlin, Peoples & Co. v. Gilder's ex'rs. 3 id. 542; McCollum & Capel v. Hogan ex'r. &c. 1 Ala. Rep. N. S. 515; Towns & O'Brien v. Alford & Butler, 2 id. 378; Craddock v. Craddock, 3 Litt. Rep. 77.

J. J. PORTER, for the defendant.   The judgment may be defective in point of form, yet as informality can't prejudice any one, it is not reversible.   [1 Porter's Rep. 15; 3 id. 226; 4 id. 160; 1 Ala. Rep. 182.]

The service of process on either one of the co-partners, was, under our statute, equivalent to service on all; but if it were otherwise, the judgment would still be good, for it expressly recites that W. J. Dearing and Sink, appeared and suffered judgment by *nil dicit.*   [2 Ala. Rep. N. S. 705.]   As to the pleas of Sink, the legal intendment is, that they were withdrawn.   [3 Stew. Rep. 339; 8 Porter's Rep. 469; 9 Porter, 145; 1 Ala. Rep. 515; 2 id. 337.]

The note, without any proof of its genuineness, or legal obligation upon J. H. Dearing, was admissible.   [1 Ala. Rep. 83; 3 id.]

In respect to the deposition of Betts, it was admissible, so far as the matter was concerned, and the objection to the form of the interrogatories came too late.   [1 Starkie Ev. 270; Pick. Rep. 310; 3 Binn. 130; 4 Conn. (2d series,) 275; 10 S. & R. Rep. 63; 18 Maine's Rep. 128; 1 Penn. 305; 7 Greenl. Rep. 181; 4 Hen. & M. Rep. 88; 15 Pick. Rep. 56.]

The demurrer to the evidence was properly overruled.   The legal intendment is most strong against the party demurring. [7 Porter's Rep. 540; 3 S. & R. Rep. 416; 1 Wheat. Rep. 179; Carson v. State Bank at this term; 2 Porter's Rep. 261;

COLLIER, C. J.—1. It is true that it does not appear from the record that the process was served on Wiley J. Dearing, but the want of it was waived by his voluntary appearance; a fact which is expressly affirmed by the judgment entry.

2. Although the record does not discover a formal withdrawal of the pleas, that were pleaded by the defendant, Sink, yet the recital in the judgment, that he said nothing in bar or preclusion of the plaintiffs' action, whereby the same was undefended, certainly amounts to a waiver of them; for such a recital is incompatible with the notion that the pleas were insisted on. Even conceding that the filing of a plea requires it should be disposed of by the Court, where it is not *expressly* withdrawn by the defendant, and still it must be inferred from the statement, that he said nothing in bar or preclusion, &c., that he withdrew all defence to the action.

3. The fifth section of the act of 19th January, 1839, " To regulate judicial proceedings," enacts, " That where the plaintiff shall bring suit as a firm, or copartnership, it shall not be necessary for proof to be made, that the individuals named as plaintiffs constitute the members of the firm, unless the defendant puts the same in issue by plea in abatement." In this case the only plea interposed is the general issue ; and consequently no proof was necessary to show that the three persons suing under the style of Smith & Wright were members of that firm. Nor was it important to prove that the defendants were *prima facie* partners, doing business in the name in which the note was executed, in order to make it admissible evidence. If the note was correctly described in the declaration it was entirely regular to read it to the jury ; in fact such a course would be proper to enable the plaintiff to proceed understandingly with evidence to make out his case. [Bell v. Rhea, Conner & Co. 1 Ala. Rep. 83.]

4. The most important inquiry is, does the evidence demurred to, sustain the judgment against James H. Dearing? In Carson v. The Bank of the State, at this term, it was held, that upon a demurrer to evidence the Court is not obliged to pronounce a judgment in conformity to what *should have been the verdict of the jury upon the issue,* but to render a judgment against the party demurring, if the jury *could legally* have returned such a verdict, on the evidence. [See also,

Young v. Foster, 7 Porter's Rep. 426.] *Further*, in the demurrer to evidence, it appeared that the proper officers of the Bank stated, that though they had no recollection of the fact, as connected with the bill sued on, yet they believed, and had no doubt, from the general course of business in the Bank, that notice of the non-payment of the bill was deposited in the post office, directed to the drawer. This Court held, that the jury might properly infer that the usual course of business in the Bank was such as to warrant the belief deposed to by the witnesses; and if the party against whom such evidence is offered neglects to inquire what is the course of business that is usual, he cannot be heard in asserting that the evidence proves nothing.

So in the United States Bank v. Smith, [11 Wheat. Rep. 171,] it is said, that " every thing which the jury could reasonably infer from the evidence demurred to, is to be considered as admitted. The language of the adjudged cases on this subject is very strong, to show that the Court will be extremely liberal in their inferences, where the party by demurring will take the question from the proper tribunal. It is a course of practice, generally speaking, that is not calculated to promote the ends of justice." The question in that case was, whether it could be inferred from the evidence, that the defendant, who was sued as the indorser of a promissory note, resided at Alexandria. The Notary Public testified, that on the day the note fell due, he presented it at the store of the maker and demanded payment of his clerk, who replied that Mr. Young, (the maker,) was not in, and he would not pay it; and that on the same day, he put in the post office a notice of non payment, addressed to the defendant at Alexandria. The Court say, " the jury would undoubtedly be warranted to infer from this evidence, that the defendant's residence was in Alexandria. If that was not the fact, this case is a striking example of the abuse which may grow out of demurrers to evidence. For a single question to the witness would have put at rest that point one way or the other, if the least intimation had been given of the objection. It was manifestly taken for granted by all parties, that the defendant lived at Alexandria. And if a party will, upon the trial, remain silent and not suggest an inquiry which was obviously a mere omission on the part of the plain-

tiff, a jury would be authorized to draw all inferences from the testimony given, that would not be against reason and probability."

Let us now consider the evidence in the record with a reference to the principles and reasoning of the cases cited. The recollection of the witness whose deposition was read by the plaintiffs below, that " Mr. Dearing" was present when the note was signed by Sink, might, in the discretion of the jury, be taken as referring to either of the Mr. Dearings, who were alledged to be members of the firm of Dearing, Sink & Co. and upon the demurrer to evidence must be understood to point to James H. Dearing ; upon the principle that all inferences shall be made most strongly against the party demurring. But if the deposition were thrown entirely out of view, we think the evidence of the plaintiffs' attorney is quite sufficient to have authorized the judgment of the County Court. The evidence of this witness was given *ore tenus* on the trial of the issue taken to the plea of James H. Dearing, and after his co-defendants had submitted to a judgment by *nil dicit*. That witness stated that he had always understood Dearing, Sink & Co. were partners, whether there had been an actual dissolution of the partnership he did not know ; and he had understood Mr. Dearing was a member of the firm. Which of the Mr. Dearings? Doubtless him who had denied that he was a joint maker of the note in suit, and not the other, who had submitted to a judgment ; for as to the latter, the fact whether he was a copartner was not litigated.

It is however argued that the witness does not testify of his own knowledge that James H. Dearing was a partner of the house of Dearing, Sink & Co. but merely from general reputation or rumor. We do not so regard his evidence. He says, "he had understood," &c. Now " understood" is the preterit of *understand*, a verb of very extensive signification, and which, among other things, means *to learn, or to be informed.* When the witness says, in effect, that he has learned or been informed that Mr. Dearing was a member of the firm, it cannot with propriety be assumed that his information was derived from rumor, but a jury might well infer that he had learned it from an authentic and satisfactory source, even from the party

himself; and upon the authority of the cases cited, the Court would be bound so to intend.

5. The objection to the admissibility of the evidence was not made to any particular question, or answer, of either of the witnesses, but to the testimony *en masse*. It is not denied by the counsel for the plaintiffs in error, that a part of the testimony of each witness is unobjectionable; this being the case, the Court was not, according to a well settled rule, bound to sift the evidence and reject that which was inadmissible. The party objecting, should point particularly to so much as he would have excluded from the jury.

6. The judgment against Sink and W. J. Dearing should not have been entered until the issue as to their co-defendant was tried and upon a verdict being returned against him, then a joint judgment should have been rendered against all the defendants; against the former by *nil dicit*, and as to the latter upon verdict. This course was not pursued, but a judgment is rendered against S. and W. J. D. and then in continuation follows a judgment for the same amount against J. H. D. These cannot be regarded as judgments wholly disconnected with each other, or the writ of error would be dismissed for a misjoinder of plaintiffs. The irregularity must be considered a mistake of the Clerk, and is provided for by the first section of the act of 1824, "To regulate pleadings at common law," [Aikin's Digest, 266,] which is as follows: "No cause shall be reversed by the Supreme Court, or any Circuit Court, for any miscalculation of interest or other clerical misprision in entertering judgment, so as to give costs to the plaintiff in error; but in all such cases the Supreme Court may order the judgment to be amended at the cost of the plaintiff in error." It was clearly competent for the plaintiffs in error to have obtained an amendment of the judgment on motion to the County Court; and we now direct the judgment to be so amended as to make it conform to what we have stated to be the law. And the plaintiffs will be charged with the costs of this Court.