PERKINS, Treas., *vs.* CORBIN, Judge, &c.

[APPEAL FROM ORDER GRANTING MANDAMUS.]

1. *Inferior court, what is; legislature may create.*—A city court, in this State, is an inferior court, and such a court may be established by the general assembly.

2. *Same; legislature may abolish.*—An inferior court established by the general assembly may be abolished by the authority that creates it. And as such an inferior court, the city court of Selma, which was created by legislative enactment in 1864, may be legally abolished by the repeal of the law creating it.

3. *Same; office of judge, abolished with court.*—The abolition of an inferior court, created by enactment of the general assembly, abolishes the office of judge of such court. After the abolition of such court and the office of judge thereof, the salary attached to the office of judge ceases, and the person who held the office of judge is not entitled to the salary attached thereto after the date of the abolition of the court and the office of judge thereof.

4. *Salaries of judges of inferior courts created by the general assembly; not protected by section 10, article 6, of the constitution.*—The salaries of judges of the inferior courts of this State, which have been established by legislative enactment, are not protected by the 10th section of article 6 of the State constitution.

APPEAL from the Circuit Court of Dallas.
Tried before Hon. M. J. SAFFOLD.

The appellee, Corbin, applied to the circuit court for a *mandamus* to compel the appellant, Perkins, who was treasurer of Dallas county, to pay him the salary claimed by petitioner, as judge of the " city court of Selma."

The petition shows that Corbin was duly and legally elected judge of said city court, at the general election held in Dallas county in February, 1868, for " the full legal term of six years, as fixed by the constitution and statute of the State ;" was commissioned by the governor, took the required oath, &c., and entered upon the discharge of his duties, &c., and continued to perform the same until the 11th day of December, 1869, when by act of the legislature the city court was abolished; that he has since been,

and is now willing to preside in said court; that petitioner's salary is fixed by law at $3,000 per annum, payable quarterly; that petitioner, on the 1st of April, 1870, demanded of Perkins his salary for the quarter from January 1st to April 1st, 1870, as well as for the amount due for the last quarter ending January 1st, 1870; but said Perkins refused to pay any amount for the quarter ending April 1st, 1870, and offered to pay on account of the quarter ending January 1st, only up to the date of the abolition of the court.

On 23d of February the general assembly passed an act to establish a "criminal court for the county of Dallas," conferring on the court jurisdiction almost identical with that conferred on the city court of Selma.

The prayer is for a rule *nisi* to issue, &c., to the said Perkins to show cause why a peremptory *mandamus* should not be granted to compel him to pay the salary claimed by Corbin up to the 1st of April, 1870.

Perkins demurred to the petition, the demurrer was overruled, and the court granted a *mandamus*, &c., and hence this appeal.

J. C. COMPTON, for appellant.—The city court of Selma was an *inferior court*, such as the legislature is authorized to establish under the provisions of Art. VI, § 1 of the constitution of Alabama.—*Nugent v. State*, 18 Ala. 521.

An office created by law may be repealed by law, without regard to the term or future salary of the officer intrusted with its exercise; public offices are not contracts. *Conner v. The City of New York*, 2 Sandf. R. 355; 1 Seld. R. 285, 295, §§ 547, 549, 550, 551, 552, 553, and cases cited in them; Pomeroy's Const. Law; *Butler v. Pennsylvania*, 10 Howard R. 416.

The power that creates offices can destroy them.—*Ellis et al. v. The State*, 4 Ind. 1; *Coffin v. State*, 7 Ind. 157.

An office may be created by statute, the term of which is fixed by the constitution; and if the constitutional term be good behavior, the officer receiving the appointment may hold it as long as the statute remains in force, and no longer, whether it be repealed, or expires by its own limit-

ation, or is continued in force by a subsequent act.—*Bruce v. Fox*, 1 Dana, (Ky.) 450.

State legislatures are not restricted in power except by federal and State constitutions.—*Dorman v. State*, 34 Ala. 230, and cases cited; *Fletcher v. Peck*, 6 Cranch, 87.

The office of the judge of the city court of Selma is the creature of the legislature, under the power given to it as the representative of the people, in the constitution of the State, Art. VI, § 1, and in the absence of any constitutional restraint, it is defeasible and subordinate to the will of the legislature. It rests in the appellee to show that the power of the legislature to abolish this court, and of necessity the office of judge of the court, is prohibited by the constitution of Alabama, and he must show it clearly and without doubt. If there is any doubt, the act of two of the three departments of the State government should be sustained.

The tenure of office of the judges in this State, as prescribed by Sec. 12, Art. V, of the constitution of Alabama, does not apply to the judges of *inferior courts*, which the legislature is authorized to establish, under the provisions of Art. V, § 1. The language is in the *present tense*, and refers to the judges of the courts established by the constitution, and mentioned by name in 10th section of Art. V, to-wit, the judges of the supreme court, circuit courts, and courts of chancery. The construction here contended for is sustained in cases construing the constitutions of Illinois and Pennsylvania, that is, sections of such constitutions similar to sections 1 and 10 of Article V of the constitution of Alabama.—See cases of *Respublica v. Alexander J. Dallas*, 3 Yeates, 300; *The People ex rel. Burgess v. Wilson*, 15 Ill. 388.

The following cases are referred to as discussing the principles involved in this case: *Hoke v. Henderson*, 4 Devereaux N. C. pp. 18, 19; *Smith v. Mayor*, 37 N. Y. 518; *Coffin v. State*, 7 Ind. 157; *Russell v. Howe*, 12 Gray (Mass.) 147; Grotius, b. II, § 8, p. 355; *Field v. The People*, 2 Scammon, (Ill.) 79.

8

MORGAN & LAPSLEY, *contra.*—" The judicial power of the State shall be vested " in certain named courts and " such persons as may be by law invested with powers of a judi-, cial nature." This investiture of power proceeds *directly from the people,* and creates a great co-ordinate *department* in the State.—Art. VI, § 1, Const. Ala.

The judges mentioned in this section are judges "of the respective counties, cities, towns or districts for which said courts may be established."

" Sec. 12. The judges of the *several courts* of this State shall hold their office for the term of six years; and the right of *any* judge to hold *his office* for the full term hereby prescribed, shall not be affected by any change hereafter made by law in any *circuit or district,* or in the mode or time of election."

The word " district," in this section, is evidently used to define the area over which the judicial power of the judge may be extended by law. It does not apply to the chancery districts alone.

The judicial district of a chancellor is called a " division," the subdivisions of this territory are called *districts,* and in section 7 of the constitution is the only place, except in section 12, where this word is used.

If we confine the word *district,* as used in section 12, to the chancery districts mentioned in section 7, we find that the chancellors cannot avail themselves of the provisions of section 12, because *divisions* are not named in that section.

The section, thus interpreted, would mean that the legislature could oust the chancellors from office by abolishing their *divisions,* but could not do so by abolishing the chancery districts.

The court is a distinct matter from the judge who may preside in it. This was settled in *Mayo v. Stoneman,* 2 Ala. 390, in connection with *State v. Porter,* 1 Ala. 688. These two cases show that a man may render a valid judgment in a court, who is prohibited, by the constitution, from holding the office of judge of that court.

The first nine sections of Article VI of the constitution relate only to the organization of the *courts,* and the dis-

tribution of powers amongst them. Sections 10, 11 and 12 relate to the judges who are to preside in said courts.

If some of those courts are *inferior*, and are not named by special designations in the constitution, it cannot logically follow that the judges are inferior. In four respects the judges are all equal, whether they preside in superior or inferior courts, viz.: 1, they are elected by the people; 2, they have the same tenure of office; 3, they cannot be removed from office by any change in their circuits or districts; and 4, they can only be removed *from office by the governor, on the address of two-thirds of each house of the legislature.*

In one other respect there is a difference established by the constitution between the judges of the inferior courts and the judges of the supreme court, chancellors, and circuit judges, viz.: by section 10, of Article VI, these last named judges are secured in a compensation for their services, to be paid at stated times, and which cannot be diminished during their continuance in office.

This guarantee is not expressly extended to judges of the inferior courts. These judges may be paid in perquisites, and within reasonable bounds these perquisites, and perhaps their salaries, may be diminished during their continuance in office.

Indeed, so distinct is the office of judge from the character of the court he presides in, that a judge of the supreme court may preside as a magistrate in the matter of conserving the peace, and may grant an injunction, and do many other things that have nothing to do with his powers when sitting in the supreme court; and a judge of the circuit court may sit in the supreme court as one of its judges.

*The tenure of office* fixed by section 12, Article VI of the constitution, has no reference to the jurisdiction or powers of the court the judge may be authorized to hold, *but depends on the single fact that he is a judge,* elected, qualified, and duly inducted into office, in conformity to the constitution and the law.

To avoid this conclusion, we are compelled to interpolate into section 12 an exception as to judges not therein

named or designated, or found in other parts of the constitution, when there is nothing on which to base the distortion, and no reason, founded in the history of the times, nor in the policy of the State, to justify or palliate it.

There is no more reason for excluding the judges of *inferior courts* from the security of their tenure of office, provided in this section, than there is for excluding judges of the supreme court from its benefits, because they are not expressly named in the section, or because they have *neither "circuits" nor "districts" which may be altered or abolished.*

Who are "the judges of the several courts of this State?"

We have seen that it is not the grade of the court, or the boundaries of its jurisdiction, that determines this question. It is the election and qualification of the individual to an office then existing, in which he may lawfully exercise in a court a part of the judicial power of the State, that alone can determine this question. This makes him a *judge*. All who are thus elected and qualified are judges, and once in office, the tenure is fixed by the constitution, and they can only be removed in the mode therein prescribed.

Was Judge Corbin a "judge of a court of this State?" It is not denied that he was a judge up to the date of the act abolishing the court. The jurisdiction he exercised was not inferior to the circuit court. It was co-ordinate and co-extensive with the circuit court in all respects, except that it was confined to the county of Dallas. His court, and its jurisdiction, was inferior only to the supreme court. This phrase, "inferior courts," has been in the constitution from the beginning. In *Nugent v. The State,* 18 Ala. Rep. 521, our supreme court has settled its meaning: "*The adjective* inferior, *as used in this clause, is applicable to, and designates the character of, all courts the legislature is constitutionally authorized to establish, as well courts of equity as of law.*"

This being the sense in which this word is used in the constitution, it can have no other meaning, except to

measure the grade of the court by the question whether
its decisions may be revised.  Such a court may have all
the powers of a circuit court, and added to these, all the
powers of the chancery courts, and still be *inferior* within
the meaning of the constitution.

It could scarcely be said of such a court, and its judge,
that they are inferior in the sense that they are not re-
ferred to in the guarantee of the tenure of office provided
for all the judges in section 12, Art. VI.

It certainly cannot be said of such an officer, presiding
in such a court, that he is not one of " the judges of the
several courts of this State."

It is argued with ability, and on plausible grounds, by
the counsel for the appellant, that the phrase, "judges of
the several courts of this State," includes only the judges
of the courts *created* by the constitution, and not judges of
courts created by the legislature.

The authorities cited by the counsel, while they sustain
the reserved right of the people to abolish the offices and
courts which are not put beyond their reach by the consti-
tution, do not apply to our constitution, which, in section
12 of Art. VI, as well as in other parts, *ex industria*, ex-
cludes the power of the people, through the legislature, to
remove the judges from office, except by address, in the
mode therein prescribed.

There is no ambiguity in section 12, Art. VI, of the con-
stitution.  It needs no assistance of light reflected from
other parts of the instrument, for its understanding.  It
has the dignity and place, in the body of the organic law,
of a separate provision ordained by the people, to secure
to the judges their offices, protected for six years against
the power of partisan legislatures to abrogate them.  It is
also a provision distinctly made, by which the people of
the judicial district, *who have elected their judge*, shall be
secure of his services against the power of the legislature
to remove him, and to make place for another, (or else de-
prive them of a constituted tribunal of justice,) under the
impulse of party passion or prejudice.  It presents, fur-
ther, the distinct enunciation of the doctrine, that, as *the
people* are the appointing power, the legislature can only

become the *removing power* on the terms mentioned in this section of the constitution.

A person "*by law invested with powers of a judicial nature*," but who is not the *judge of a court*, in this State, is not protected in his tenure of office by this section.

The case of *Republic v. Dallas*, 3 Yeates, (Penn. Rep.) 300, is relied on by appellant as an authority for the construction of our constitution. In that case, the Recorder of the city of Philadelphia was held to be a judge, because he was empowered by law to hear and decide, in certain cases, between litigants. On pages 303 and 304 the section of the constitution is given on which this decision rests. It vests the judicial power of the State in certain named courts, "and in such *other courts* as the legislature may, from time to time, establish." It is obvious that, in Pennsylvania, no man could exercise judicial power except as a judge, because he could only exercise it in a court. Not so in Alabama, however. Here no man is a judge unless he is elected and qualified to preside in a certain court; and all who are thus set apart and qualified, are judges, not of all the courts, but of the *several courts;* still, there may be those "invested with powers of a judicial nature," who are not judges. What authority have we for the assertion that " the judges of the several courts of the State," mentioned in section 12, Art. VI, are only such as preside in courts created, in express words, by other parts of the constitution?

This article was adopted at a time when many courts in this State were duly organized, and were duly administering the laws of the land; and in section 11, Art. VI, the people reserve the express right to elect judges for cities, towns, or districts. There were then city courts in existence, and, referring the broad language of section 12 to the specific mention of courts for " cities," in Art. 1, and, with still more force, to the fact that city courts then existed, it would seem to be unreasonable to confine the meaning of section 12 to the courts mentioned *by name* in section 1 of Art. VI.

The effort to place this narrow interpretation on section 12 fails, also, because it would render this section useless

to protect any of the judges, except the judges of *districts and circuits.* What great public reason exists why these should be protected, and all others left to the mercy of partisan rancor, or the whims of the legislature that happened to be in power? Has there not been enough of party division in this State, for the past twenty years, and enough of animosity between these parties, to justify a wise people in the effort to secure *a permanent and independent judiciary?*

We admit broadly the doctrine that the people are supreme in the State, subject to the concessions of power made to the co-ordinate department of the State. But it does not follow from this admission that they have made the legislature supreme.

*For the security of the judiciary* itself, one of these great co-ordinate departments, the people, in their constitution, have expressly *guarded and restricted the power of the legislature.* This department (the legislature) has always claimed to be "the people," and it has often invaded the rights and authority of other departments. *It once elected the judiciary,* but the people took from it that power. It once had unlimited control over *the tenure* of inferior judicial officers, (judges,) and the people restricted this power. The people now elect all the judges, and every man duly qualified and placed in office by the votes of the people, is a *judge.*

The people have further restricted the power of the legislature to remove the judges, not only by securing the tenure of their office, but also by prescribing express rules and conditions in respect of removals by the constitution.

In this case, the legislature has legislated so as to remove a judge from office. They have abandoned the judicial functions of address and impeachment conferred on them by the constitution, and have ignored the rule requiring a two-thirds vote of each house, and forgotten that the governor must remove the censured incumbent, and have attempted to vacate his office by repealing the law that established his court.

Suppose that on the next day after this law had been repealed, another law *of the same import* had been enacted,

who would have been judge of this new court? It would have been Judge Corbin. His office had not expired. He was still a judge, and the new enactment provided the very tribunal in which he was authorized to preside.

The legislature did, at the same session, organize a new court, providing for the election of a judge with the same tenure of office, the same salary, and to be paid in the same way, and only restricted the new court in its jurisdiction by calling it a criminal court for Dallas county, and confining its powers to criminal proceedings. The area of its jurisdiction was the same with the city court of Selma.

Here are two courts, identical in jurisdiction as to the boundaries of the district, and identical as to their judicial power, except that the substituted court has less power than the one destroyed, with judges paid the same salary, and elected, each, for six years. The one destroyed and the other created by the same legislature, and at the same session. It is not necessary to our argument that we should consider whether the legislature had power thus to change the name and powers of the city court of Selma ; but two points arise out of this state of facts that are necessary to be considered :

1. That in fact, and evidently in intent, this was an attempted legislative transfer of *the office of judge* from the hands of Judge Corbin to his successor, and that the only disguise resorted to, for the cover of the movement, was the change of the name of the court, and the reduction and transfer to the circuit court of some of its powers!

On this point see *Warner v. The People*, 2 Denio, (N. Y.) 272.

2. That, if the legislature has power thus to destroy one court and build up another out of the very materials that composed the other, and in many respects in the same similitude ; and if the judge elected to the new court is in law the judge of that court, still the legislature could not, by this means, or by creating this result, *deprive Judge Corbin of his office.* This part of their proceeding was *ultra vives.*

To this it is answered, that the people elected Judge Corbin's successor.

Our reply is, this was true, but Judge Corbin was already a judge, and lawfully held his office and commission ; and the legislature had as much power, by an enactment, to revoke his commission and declare his office vacant, and to require him again to run for it, as it had to take the bench from under him, narrow it a little, change its name, and allow whoever could beat him to sit upon it. They could not prescribe that he should cease to be a judge unless he should be twice elected, by the same constituency, to office.

It is further answered by the appellant, that " the people"—the legislature—in the exercise of the high power of providing for the welfare of the State, may abolish a court no longer needed by the people.

We admit this proposition, but reply that this has not in fact been done. The court has been changed in its name and jurisdiction, but not abolished. This may be a conclusion not in accordance with the face of the record, but the disguises employed thus to make the matter appear, are so transparent that an eye susceptible to the impress of truth cannot be deceived by them. The truth is manifest, that the whole scheme was intended only to legislate a judge out of office.

We contend further, that if this legislature has abolished the city court of Selma, it has not abolished the office of judge of that court, as to the incumbent, so as to deprive him of the emoluments of his office. *The act does not touch his right to pay.* It goes no further than to abolish the court.

It is " *the right of the judge to hold his office*" *for the full term of six years,* that shall not " be affected by any change hereafter made," &c., and *not his right to hold his court,* that is thus protected.

The legislature may deprive him of all jurisdiction, by removing the legal means and appliances necessary to enable him to exercise the same, but his " right to hold his office " is a *personal right,* of which the legislature can not deprive him, except by impeachment and conviction, or by address to the governor.

We admit that this does not rest on the ground of contract, as disconnected with the provisions of the constitu-

tion, or perhaps even connected with such provisions. It rests on the ground of *the guarantee of the State*—1st, to the judge, that when he is elected and qualified as judge of a court, he shall not forfeit his office except by his misconduct, and it shall continue for six years; 2d, that he shall not be removed from his office except on address or by impeachment.

It is also argued by the appellant, that it is wrong in principle to hold the State bound to compensate a man who has no corresponding duties to perform.

If a case should never come before a judge duly elected and qualified, the same argument would apply. But how can the State insist on this point, while it concedes the fitness and competency of the judge, by its omission to address the governor or to impeach him, and forbids him to render such service as his office requires of him, which he is ready to render?

If the legislature chooses to inflict on the people additional taxation to pay a judge who has been substituted for the discharge of the duties of another competent and duly qualified officer, it may do so, but this is not a cause of complaint against the supplanted officer, nor is it a reason why he should be put out of office, or why he should hold an office without compensation.

After all, section 12 of Art. VI means simply this: that "the judges of the several courts of the State" *shall not be legislated out of office*, but may be removed or impeached. The *provisoes* in this section are still further restrictions on the power of the legislature to remove a judge, and present a still stronger argument to prove that it was the intention of the framers of the constitution that the judicial office should be sacred from the touch of partisan violence, *and the judges of all the courts* independent of the constant pressure of political influence, or the personal power of men in authority.

If section 12 of Art. VI is confined only to the judges of courts named in the constitution, then there is no constitutional tenure of office prescribed as to other judges. Still, it would seem that the people, under section 11, have the right to elect judges only for the constitutional term of

six years, and in said section courts of "cities and towns" are included expressly. *It is the tenure of the office of the judges* of the several courts of this State that is established and secured by this section, and it seems to be unreasonable now to restrict it only to such courts as are expressly created by the constitution, by name, especially when many courts, not so named, were in actual existence when the constitution was adopted.

PETERS, J.—This is a proceeding by *mandamus* on the part of the judge of the city court of Selma, to compel the treasurer of the county of Dallas to pay the salary of said judge of said city court, which he claims has accrued to him since said court has been abolished by act of the general assembly of this State.

In the court below, judgment was given in favor of the petitioner, Judge Corbin, and a *mandamus* ordered to issue in conformity to the prayer of the petition. From this judgment Perkins, the treasurer, appeals to this court, and here assigns the action of the court below as error.

The main facts, upon which this grave case depends, are these: A court, styled the city court of Selma, was established by an act of the general assembly of the insurgent government, existing in the State of Alabama during the rebellion, which purports to have been approved on December 9th, 1864.—Pamph. Acts 1864, p. 146. The petitioner, John S. Corbin, was elected judge of this court at the February election in the year 1868, at the time of holding the general elections in this State in that year; that afterwards, by an act of the general assembly of this State, approved on August 5th, 1868, said election of said judge of said city court of Selma was ratified and confirmed.— Pamph. Acts 1868, pp. 79, 80. Thereupon, said Corbin was duly commissioned, as required by law, and after being duly qualified, entered upon the discharge of the duties of said office of said judge of said city court; and afterwards, on December 11th, 1869, by further act of the general assembly of this State said city court of Selma was abolished.—Acts 1869–70, p. 6, No. 6. At the same session of the general assembly at which said city court was abol-

ished, another act was passed, entitled "An act to establish
a criminal court for the county of Dallas," which was ap-
proved February 23d, 1870. This latter act repeals all
laws in conflict with its provisions.—Pamph. Acts 1869-70,
p. 170, No. 165. This last named act clearly repeals the
act of 1864, by which the city court of Selma was estab-
lished.

The section of the enactment of 1864 fixing the salary
of the judge of said city court is in these words: "Sec. 11.
Be it further enacted, that the salary of the judge of the
court hereby established, shall be three thousand dollars a
year, and shall not be diminished during his continuance
in office, and shall be payable quarterly at the treasury of
the county of Dallas, upon his order, out of any moneys
unappropriated; and for the remuneration of said county
for payment of the same, the fees, fines and forfeitures in
all criminal cases in the city of Selma shall be paid into
said treasury to the full amount of said salary, in prefer-
ence to any other appropriation of the same."—Pamphlet
Acts 1864, pp. 146, 148, § 11.

There are two questions which arise on this record, the
decision of which must settle the fate of this application.

The first involves the validity of the enactment estab-
lishing the city court of Selma. The other involves the
power of the general assembly to abolish a judicial office
in this State.

It is scarcely now a question capable of doubt, that said
city court was not established by any lawful legislature of
the State of Alabama, and that it was not a court estab-
lished under the present constitution of this State, or under
any constitution, entitled to be enforced in this tribunal.
The law of its creation was an invalid enactment.—
*Texas v. White,* 7 Wallace, 700; 44 Ala. 554. Said act
was never a law of this State, and it has not been kept in
force by the rightful State government.—Acts 1868, page 7.
But it has, on the other hand, been repudiated and re-
pealed.—Pamph. Acts 1869-70, p. 6, No. 6, p. 170, No. 165.
It was not a court created by the rightful sovereignty. Its
officers are not, then, under the protection of the constitu-
tion now in force in this State. The ratification of the

election of 1868 can not be regarded as the establishment of a court under the present constitution. The establishment of a court and the election of a judge are separate and distinct things; and each must be accomplished in an appropriate and legitimate manner—in the manner that the constitution prescribes.—Const. Ala. 1867, Art. 6, §§ 1, 11. Very clearly, as it seems to me, this has not been done in this case.

It is said by Woodbury, J., in the opinion of the court in the case of *Scott v. Jones*, that "the argument is a fair one. that as the territorial government was still in operation in Michigan for some purpose, no new political organization could take place within its limits, which was capable of passing valid laws or charters of incorporation, without a previous sanction by Congress, under the third article of the constitution."—5 How. 343, 425, at top. This just and safe principle was laid down without dissent in 1846. It was afterwards more directly affirmed, in 1848, in the ably argued, well considered, and important case of *Luther v. Borden*, (7 Howard, 1, 38, 39.) And in the recent case of *Texas v. White, supra*, it was settled that the government in a State may be unconstitutional, as well as a law, and as such it can not pass valid enactments. This was, I believe, the unanimous opinion of the court.—7 Wall. 700, 732, at bottom, and *dissenting* opinions. The enactment of the rebel government of Texas authorizing the endorsement of bonds, in controversy in that case, was not obnoxious to the constitution of the Union or the constitution of the State. This was not pretended. But it was pronounced invalid, because the legislature which passed it was "unlawful." The bonds in controversy in that case were the property of the State of Texas, and the rightful government of that State had authority to dispose of them in such manner as the lawful legislature of the State might think fit. And the act giving power to do this would have been lawful had it originated from a lawful authority. The same is the case here. The law establishing the city court of Selma did not proceed from a lawful authority. It was therefore void. It was enacted by a power hostile to the Union, and hostile, also, to this State as a part of the

Union. Such laws are not entitled to claim any constitutional protection. To give them force in this court, without re-enactment, is, so far, to give validity to the rebellion.

But aside from this objection, to petitioner's claim, the courts of this State are not only divided into courts superior and inferior; they are of different characters. Some are established by the constitution itself—that is, by the people. They do not depend on legislative enactment for existence. They are created at the same time and in the same way with the legislature itself. They are of the same grade in the sovereign power. They are a constituent branch of the government itself. The government under the constitution is not complete without them. These are the "senate, sitting as a court of impeachment;" the "supreme court," the "circuit courts," the "chancery courts," and the "courts of probate."—Const. Ala. 1867, Art. 3, § 1; *Ib.* Art. 6, § 1. These courts do not owe their existence to the legislative power, and the legislature can not dispense with them, or abolish them. They are emphatically the people's courts; and they proceed directly from the sovereign will. They constitute a co-ordinate and independent department of the government, and there is no other department of the government that can abolish them. The people alone, in whom is the ultimate sovereign power, can do this. They are each, in their way, constitutional elements of the State sovereignty itself, as represented in the government.

There are other courts, called in the constitution "inferior courts of law and equity," which "the general assembly may from time to time establish." These latter courts derive their existence from legislative enactment. They are the creatures of the law-making power of the State. A city court, under our constitution, is of this latter character. It is established by the legislature. It is the creature of a statute law. All statute laws are subject to repeal, except when they create a contract. Here that is not the case. The establishment of a court is not the creation of a contract. Then, such a law may be repealed. And when it is repealed all the rights depending on it ex-

pire, unless there is a reservation or exception in their favor.—Const. Ala. Art. VI, § 1; *Nugent v. The State,* 18 Ala. 521; *Bloomer v. Stalley,* 5 McLean, 161; *Kellogg v. Oshkosh,* 14 Wis. 623; 2 Benth. Works, 402, *et seq.;* Cooley's Const. Lim. pp. 125, 126, 276; *Pope v. Lewis,* 4 Ala. 437; *Butler v. Pennsylvania,* 10 Howard, 402; *Commonwealth v. Mann,* 5 Watts & Serg. 418; *Conner v. New York,* 2 Sandf. 355; 5 New York, 285; Dwarris on Statutes, 419.

Undoubtedly, then, the legislature may repeal a statute passed by itself establishing an inferior court. This abolishes the court. And, necessarily, where there is no court there can not be any such office as judge of such court. Such an idea would be a solecism in judicial interpretation. There is no constitutional protection to the salaries of the judges of inferior courts in this State. This protection only extends to the judges of the supreme court, the circuit courts, and the courts of chancery.—Const. of Ala. 1867, Art. VI, § 10. And whatever doubt there may be about the legislative authority to abolish such an office, the law allowing and providing for the payment of the salary of a judge of an inferior court may be repealed. In this case this has been done.—Pamph. Acts 1869–70, p. 6; ib. p. 170, No. 165, § 17; and cases *supra.*

It seems, then, free from all rational doubt, that such an office as the judgeship of a city court is a statutory office, and one who accepts it does so with such infirmities as belong to it. If it is subject to be abolished by the repeal of the law creating it, there seems to be little grounds justly to complain that it is one of its incidents so to fail within a period of six years. The establishment of the court originates the office of judge of the court. The judicial power is in the court, and not in the magistrate who presides over it; so that the legislature can not make a judge independent of a court. The legislative power is solely to establish inferior courts, and along with the court the office of judge of such court. The judges who are elected by the people are to be judges of the courts mentioned in the constitution, or such as have been established by law; not judges merely, without courts to preside over. Such judges are unknown to our constitution.—Const. Ala. 1867,

Art. 6, § 11. The term of the office of " the judges of the several courts of this State is limited to six years," but only when the court so long exists.—Const. Ala. 1867, Art. 6, § 12. It does not take away from the legislature the power to abolish a statutory court. The legislative power is supreme, unless there is an express constitutional limit. Cooley's Con. Lim. pp. 1, 87, 88, 168; *People v. Draper*, 15 N. Y. 543; *Dorman v. The State*, 34 Ala. 216.

The foregoing views of the constitution and laws of this State, under which the petitioner sets up his claim in this case, lead me to the conclusion that the learned judge erred in his order and judgment in the court below. The judgment of the court below must, therefore, be reversed.

And this court, proceeding to render such judgment as the circuit court should have rendered, doth hereby order, adjudge, and decree, that the judgment of the circuit court in this cause on the trial below, be reversed, that an order for a rule *nisi* in favor of the petitioner be denied, that the petition and application for *mandamus* be dismissed, and that the said John S. Corbin, the appellee in this court, pay the costs of this appeal in this court and in the court below.—Revised Code, § 3502.