# Lee *v*. Elba Drug Co.

## *Assumpsit.*

(Decided Feb. 6, 1912. Rehearing denied April 4, 1912.
58 South. 58.)

1. *Courts; Abolition; Statutory Provision.*—Construing sections 139, 144, 146, 148 and 171, Constitution 1901, it is held that the inhibition in the Constitution that the legislature may not deprive a court of jurisdiction without at the same time lodging it in some other tribunal, was directed to the courts created by the Constitution alone, and would not prevent the legislature from abolishing the court which it had itself created; hence, Local Acts 1907, p. 30, repealing an act to establish the County Court of Coffee County, was not invalid under section 171 of the Constitution, because it fails to confer the functions and jurisdictions of said county court upon some other court.

2. *Appeal and Error; Jurisdiction; Judgment Reviewable.*— Where the legislature had abolished the county court and after its abolition, a person files a complaint therein with the person who had been clerk, and the person who had been judge thereof enters judgment thereon, the judgment is a nullity and will not support an appeal.

APPEAL from Coffee County Court.

Heard before Hon. J. N. HAM.

Assumpsit by the Elba Drug Company against Pate Lee. Judgment for defendant and plaintiff appeals. Appeal dismissed.

RILEY & CARMICHAEL, JOHN H. WILKERSON, R. H. ARRINGTON, and J. A. CARNLEY, for appellant. The judgment was rendered by a court that has been abolished by an act of the legislature prior to the filing of the complaint in that court. This was a court of statutory creation and the legislature could abolish it without conferring its functions or jurisdictions on any other court.—*State ex rel. Winter v. Sayre,* 118 Ala. 1; *Perkins v. Corbin,* 45 Ala. 102; *Ex parte Roundtree,* 51 Ala. 42; *Larkin v. Simmons,* 155 Ala. 273.

[Lee v. Elba Drug Co.]

W. W. Sanders, for appellee.  It must be presumed
that the Constitution means just exactly what it says.—
Black's Const. Law, p. 68; *Newell v. The People,* 7 N.
Y. 9.  If this be true, then the various sections from 139
to 171 inclusive of the Constitution of 1901 can be read
with no other meaning than that the legislature is with-
out authority to abolish a court without conferring its
functions and jurisdictions upon some other court.—
*Ex parte Sayre,* 118 Ala. 1; *Hooten v. Mellon,* 142 Ala.
245; *Alfred v. Hicks,* 142 Ala. 355.

WALKER, P. J.—The controverted question on this
hearing is whether the act of the Legislature approved
February 28, 1911 (Loc. Acts 1911, p. 30), which pur-
ports to repeal an act entitled "An act to establish the
county court of Coffee county," etc., approved February
8, 1901, and all subsequent and amendatory acts relat-
ing to said court, is rendered invalid by the provision
of section 171 of the Constitution that "the Legislature
shall have the power to abolish any court, except the
Supreme Court and the probate courts, whenever its ju-
risdiction and functions have been conferred upon
some other court."  It is urged, on the one hand, that
the attempt of the Legislature to repeal the laws under
which the county court of Coffee county had its exist-
ence was rendered ineffectual by reason of the failure
of the Legislature, in the act by which this purpose was
sought to be accomplished, or otherwise, to make pro-
vision for conferring upon some other court the juris-
diction and functions of the court so sought to be put
out of existence; while, on the other hand, it is con-
tended that the existence of such a statutory court may
effectually be terminated by a repealing act, though no
provision is made for conferring upon some other court
the jurisdiction and functions of the abolished court.

The question presented requires a consideration of the meaning and scope of the above quoted provision of the Constitution.

The present Constitution is like its predecessor in providing in the first section of its article relating to the judicial department of the state government (Constitution, § 139) that "the judicial power of the state shall be vested in the Senate sitting as a court of impeachment, a Supreme Court, circuit courts, chancery courts, courts of probate, such courts of law and equity inferior to the Supreme Court, and to consist of not more than five members, as the Legislature from time to time may establish, and such persons as may be by law invested with powers of a judicial nature." It is also like the former Constitution in defining the jurisdictions and functions of the Supreme Court and of some of the other courts mentioned by name in the enumeration of the courts in which the judicial power of the state is vested, and in dividing and distributing among tribunals of its own creation the whole judicial power of the state. As to its scheme for the distribution and exercise of this power, the following statement, made in reference to the former Constitution, is applicable to the present one: "The system is in itself and of itself complete; and, though there has been a grant or reservation to the General Assembly of power to establish inferior courts of law and equity, there has not been any part, or any fraction, or fragment of judicial power, left in abeyance, awaiting the happening of any future event, or the exercise of future legislative power, to vitalize or quicken it into activity. If the General Assembly never exercised the power to establish inferior courts with which it was clothed and its exercise is purely matter of legislative discretion, the whole element of sovereignty known as the judicial power would exist, confined to tri-

bunals which may properly be said to be of constitutional creation."—*State ex rel. Winter v. Sayre*, 118 Ala. 1, 18, 24 South. 89. But by provisions of the present Constitution following the one last quoted the Legislature is given the right, not conferred by the former Constitution, of withdrawing powers from some of the courts of constitutional creation, namely, the circuit courts and the chancery courts, and of conferring all their jurisdiction and functions upon courts of its own creation. It cannot properly be said of all the courts created by the present Constitution, as was said in the opinion just quoted from (at page 26 of 118 Ala., at page 91 of 24 South.) in reference to those courts as they existed under the former Constitution, that, "whatever may be the scope of legislative power to regulate the exercise of the jurisdiction conferred upon them, or in the enlargement of their jurisdiction to meet varying conditions and necessities, statutes cannot destroy them"; nor, as was said in effect in that case and in other cases, that all these constitutional courts are necessarily permanent parts of the judicial system of the state, whose powers and jurisdiction, so far as conferred and defined by the Constitution, are exempt from legislative impairment.—*Perkins v. Corbin*, 45 Ala. 103, 6 Am. Rep. 698; *Ex parte Roundtree*, 51 Ala. 42. The provisions of the present Constitution which are mentioned below are referred to as evidencing its purpose to permit the Legislature to transfer to courts of its own creation the functions and jurisdiction of some of the constitutional courts inferior to the Supreme Court. Instead of the requirement of the former Constitution (1875) art. 6, § 6, that "a circuit court shall be held in each county in the state at least twice in every year," the corresponding requirement of the present Constitution (section 144) is that "a circuit court, or

a court having the jurisdiction of the circuit court, shall be held in each county in the state at least twice in every year." In like manner the requirement of the present Constitution (section 146) that "a chancery court, or a court having the jurisdiction of the chancery court, shall be held in each district, at a place to be fixed by law, at least twice in each year," takes the place of the provision on that subject in the former Constitution (1875) art. 6, § 8, that "a chancery court shall be held in each district, at a place to be fixed by law, at least once in each year." Section 147 provides that "any county having a population of twenty thousand or more, according to the next preceding federal census, and also taxable property of three million five hundred thousand dollars or more in value, according to the next preceding assessment of property for state and county taxation, need not be included in any circuit or chancery division." It is provided by section 148 that "the Legislature may confer upon the circuit court or the chancery court the jurisdiction of both said courts. In counties having two or more courts of record, the Legislature may provide for the consolidation of all or any such courts of record, except the probate court, with or without separate divisions, and a sufficient number of judges for the transaction of the business of such consolidated court." It is apparent from these provisions that it may become possible for the Legislature to effect such changes in the state's system of courts inferior to the Supreme Court as to leave the circuit courts and the chancery courts provided for by the Constitution stripped of all functions and jurisdiction. But we find nothing in the Constitution to indicae a purpose even to permit the Legislature at one session to give such permanence or inviolability to the functions and jurisdiction conferred upon a court of its

own creation as to impair the right of a subsequent
Legislature to withdraw the whole or any part of the
power so conferred, or to abolish such court altogether.
In other words, the Legislature cannot, by the creation
of any court, effect such a permanent allotment of part
of the judicial power of the state as resulted under for-
mer Constitutions from the provisions conferring a de-
fined jurisdiction upon the circuit courts, with which
the Legislature was not authorized to interfere. The
Constitution itself having made a complete distribution
among courts of its own creation of the entire judicial
power of the state, and the Legislature not having put
into exercise its power to supersede any of those courts
which it is authorized to supersede, the mere abolition
of any court of legislative creation would not result in
leaving in abeyance any fraction or fragment of the ju-
dicial power of the state, as the part of such power
which had been vested in the abolished court would in
such event revert to the court or courts provided by the
Constitution for its exercise. But, in the event of an
exercise by the Legislature of the right conferred upon
it of stripping of their jurisdiction some of the consti-
tutional courts, the result might be to leave in abey-
ance the whole or a part of the power which was vested
by the Constitution in the dismantled courts, unless
there was some prohibition of a divestiture of those
courts of the power conferred upon them by the Consti-
tution without at the same time lodging it in some other
tribunal or tribunals. The framers of the Constitution
recognized the propriety or necessity of so limiting the
right in this regard for the first time conferred upon the
Legislature as to prevent its exercise having the result
of leaving any part of the judicial power of the state
unappropriated to some tribunal authorized to admin-
ister it. Such a result was effectually provided against

by section 171 of the Constitution, which is set out above. The effect of preceding provisions contained in the article of the Constitution of which that section forms a part was to vest in the Legislature the power of depriving of their functions and jurisdictions all of the courts provided for by the Constitution, except the Supreme Court and the probate courts. The connection in which that provision is found makes it plain that the courts which it makes subject to abolition are the constitutional courts which, under preceding provisions of that article, could be deprived of power or jurisdiction by legislative action. That section merely expressed the purpose to make complete the power of the Legislature over the existence of those courts by explicitly giving it the right to abolish them entirely, provided their jurisdiction and functions are conferred on some other court; and it is apparent that the provision had no reference to courts of legislative creation, the permanency of which is in no event provided for or contemplated by the Constitution. A condition was attached to the right of abolishing courts provided for by the Constitution, so as to prevent any legislative action in reference to them having the effect of creating a chasm or void in the scheme provided by the Constitution for the exercise of the entire judicial power of the state. No such vital derangement of the state's judicial system could result from the abolition of a court created by the Legislature, except in the possible event of its being the sole existing depository of the whole or a part of the judicial power which was originally vested in a constitutional court which has been abolished. Such courts are not within the terms or the manifest purpose of the provision in question. It follows from this conclusion that it is not a valid objection to the act above referred to, which undertook to repeal the acts

[Lee v. Elba Drug Co.]

under which the county court of Coffee county had its existence, that it does not make provision for conferring upon some other court the jurisdiction and functions which had been vested in that court, which was one of limited civil and criminal jurisdiction. It was beyond the power of previous Legislatures, by apportioning to that court the jurisdiction and functions which were conferred upon it, to create a necessity of maintaining that or some substituted statutory tribunal for the exercise of the special group of powers with which it was endowed during its legal existence. The power which gives life to such a court may put an end to it at any time.

By the terms of the repealing act above referred to the county court of Coffee county went out of existence on the 15th day of July, 1911. The person who had been the judge of that court, treating it as still in existence, undertook on September 4, 1911, to render judgment in favor of one who on the 15th day of August, 1911, had filed with the person who was the clerk of that court during its legal existence a complaint containing the common counts. The transcript before us purports to present an appeal from that so-called judgment. As the court whose judgment purports to be presented for review ceased to have any legal existence before the proceeding was instituted, there is no judgment to support an appeal; and the so-called appeal is dismissed.

Appeal dismissed.