The opinion of the Court was delivered by
JohnsoN, J.
The defendant was indicted, tried, and convicted, in the Inferior City Court of Charleston, for retailing spirits without a license, contrary to the Act of Assembly in such case made and provided, and a motion was made in this Court to arrest the judgment.
There are several cases on the docket which depend on the questions involved in this case, and the grounds stated in the briefs, which have been furnished', are so multifarious and diversified, that it would be inconvenient to introduce them here, and they are deemed unnecessary, as the *2341 Case maJ more Conveniently considered, and better understood, ^ by confining it to a general division of the principles involved in the various questions made.
They present the following points:
1. Whether the judge of that Court (the Recorder of the city,) has been appointed in such a manner as to authorize the Legislature, by act, constitutionally to confer on him the judicial power under which he claims jurisdiction of this cause, and others of the same class ?
2. Whether the sheriff of that Court is constitutionally appointed, and if not, whether the whole proceedings of the Court are not illegal and void ?
3. Whether the mode of proceeding by indictment is authorized by the Act creating this offence ?
Before entering on the question in relation to the appointment of the judge of the Inferior City Court, and the jurisdiction of that Court over the offence charged in the present case, it will be necessary to take a cursory view of its organization and the Act by which this jurisdiction is conferred.
*513 By the act of incorporation, and those emendatory,[1] the corporation were authorized to elect an Intendant and Wardens, and a Recorder, and certain other officers, and generally, “ all other officers they might deem necessary and proper,” &c., and the judicial powers were vested in a Court denominated a Court of Wardens. This Court was afterwards abolished, and in its stead the legislature, in 1801,[2] established the present Court, giving to it jurisdiction of all civil causes arising within the city, as far as $100, concurrent with the Court of Common Pleas, and over all offences against the by-laws, and constituted it a Court of Record. This act[3] also provides, that it shall be “ called the Inferior City Court, and be held by the Recorder of the city of Charleston, and that the City Council shall provide and fix such compensation for the Re-coi’der as may be fit and proper, and proportioned to the importance of his station, and which compensation shall not be increased nor diminished during his continuance in office, to be paid by the city *tax, and the rt-oog said Recorder shall hold his commission during good behavior.”[4] *- It also provides, that all cases above the jurisdiction of a magistrate, shall be tried by a jury, and points out the mode of forming a jury, and in fixing the fees of the officers of the Court, recognizes such an officer as a sheriff in that Court. 3 Brev. Dig. 46, s. 68. Under this act the Recorder is elected, and in pursuance of the city ordinance he is commissioned by the Intendant accordingly, and in this instance, as has been lately the usage, he was also commissioned by the Governor.
The Act under which that Court claims jurisdiction of the present cause, was passed in December, 1818.[5] It provides, “ that the Inferior City Court of Charleston shall have concurrent jurisdiction with the Court of Sessions in all cases of misdemeanor, assault and battery, arising within the City of Charleston; also in all cases of trover, detinue, replevin, and trespass, arising within the said city, to the amount hereinafter specified ; and the said Inferior City Court shall have jurisdiction in civil causes, to the amount following: Ho verdict shall be given for a greater sum than $500, exclusive of costs, but any amount not exceeding $500, exclusive of costs, shall be, and the same is, hereby declared to be within the jurisdiction of this Court, whether the same be damages, or the balance of mutual demands, or single cause of action,” and confines this jurisdiction to persons resident within the city, &c. The third clause of the Act also provides, that the judge of this Court “ shall have the same powers in the discharge of his duties as the judges of the Court of Sessions and Common Pleas in like cases, and the proceedings in criminal and civil cases, over $100, shall be substantially the same as in the Courts of Sessions and Common Pleas,” and an appeal is given directly from that Court to this.
Under the authority of the Acts of incorporation, no one will question that the corporation had the power to elect both a Recorder and a Sheriff, and the question involved in the first point is resolved into the inquiry, * whether the Act of 1818, conferring this increased juris- r*o36 diction over cases and offences relating to the laws of the State, ^ is constitutional or not? As preliminary to this question, I will merely remark, that it is an axiom that does not now require the aid of reasoning *514 to vindicate, that the Legislature of the State, as the representatives of the people, possess unlimited power over all subjects of legislation not taken away by the constitution ; inasmuch therefore as they are not forbidden by that instrument, they had the power to pass the Act of incorporation, and to confer on them any privileges within the pale of legislation, and, among other things, which no one has pretended to deny, the power to elect a Recorder, and to constitute a tribunal to decide questions arising under their by-laws.
Let us then inquire whether the Legislature are forbidden to transfer a part of the jurisdiction of the Courts of the State to a tribunal thus constituted.
By the first section of the third article of the constitution, it is provided,[1] “ that the judicial power shall be vested in such superior and inferior Courts of law and equity as the Legislature shall from time to time direct and establishand the first section, sixth article, provides, in respect to the judiciary,[2] “ that the judges of the superior Courts shall be elected by joint ballot of both houses,” and that “ all other officers shall be appointed as they hitherto have been, until otherwise directed by law.” Inferior, as well as superior Courts, are expressly provided for, and the mode of appointing the judges of the superior Courts is prescribed, but that of appointing the judges of the inferior Courts is nowhere pointed out. It would therefore follow, even from the axiom laid down, that the Legislature had the power of providing for it, and the last section quoted, moreover, expressly gives them the power under the terms, “ all other officers.” Under this authority, they have by law authorized the corporation to elect a judge of the Inferior City Court, or, in other words, eon--j.no>,-] ferred the jurisdiction exercised by that *Court on the Recorder ; as a judge, therefore, entertaining jurisdiction over subjects belonging, in the language of the constitution, to an inferior Court, the constitutionality of this appointment cannot, I think, be questioned.
But it is said, that he is exclusively the creature of the corporation, and therefore not entitled to decide on questions over which they possess no power. This may be true so far as he derives his power from them, but the very Act under which he is authorized to take cognizance of this cause, jpro hao vice, constitutes him an officer of the State, and he may be literally said to be serving two masters, the corporation and the State, the former in respect to the power derived from it, and so as to the latter.
If this view of the subject be correct, it follows, that the judge has been appointed and commissioned constitutionally and legally to hold an inferior Court, and it only remains to be inquired, whether it becomes superior in consequence of the powers conferred on it by the Act under which this prosecution was entertained ? The words, superior and inferior, as here used, do not belong to any class of the Acts which circumscribe their meaning, and must therefore be received in their ordinary acceptation, and in relation to this subject, the former may be defined to be that jurisdiction which possesses a controlling power over all others, and the inferior that which is subordinate to it.
Let the powers of the two Courts, then, be tested by these definitions. *515 The Courts of Common Pleas and Sessions possess unlimited jurisdiction over all questions arising on either side. Every citizen is amenable to them, and in territorial extent it is bounded only by the limits of the State ; and moreover exercises a controlling power over all subordinate jurisdictions.
The City Court, by the act creating it, is denominated the Inferior Court, its limits are confined to Charleston, and its inhabitants, and its jurisdiction in criminal, cases to that class of offences denominated ^misdemeanors, and in civil cases to $500. If this comparison r*9qo be just, its inferiority is manfest. L
But it is said, that the unlimited jurisdiction conferred on it in respect to misdemeanors is superior, inasmuch as the Court of Sessions could not control it in relation to them. The conclusion is just, but the argument I think fallacious; for if to have concurrent jurisdiction with a superior Court, over a limited class of cases of inferior grade, constitute the inferior Court its equal, the distinction is idle and useless, for all the Courts and jurisdictions in existence at the adoption of the constitution, and since organized, possess, in some measure, concurrent jurisdiction ; thus from £3 to $20[1] the jurisdiction of the Common Pleas and a single magistrate, is concurrent. The County Courts, the judges of which were appointed by the nomination of the legislature, had, at the adoption of the constitution, and continued to exercise jurisdiction concurrent with the Courts of Common Pleas and Sessions to an unlimited extent over all actions arising on liquidated demands, and all crimes and misdemeanors, except criminal cases, where loss of life or member might be inflicted, until they were abolished in 1198,[2] and with all these powers no one ever entertained a doubt that they were inferior Courts, and subordinate to the Courts of Common Pleas and Sessions; nay, if we regard the res gestee as entitled to any influence, this jurisdiction was that expressly referred to in the constitution under the denomination of inferior Courts.
Again, it is urged that this Court cannot control the Inferior City Court in the exercise of the jurisdiction given by this act, inasmuch as the act itself declares the jurisdiction concurrent with the Courts of Common Pleas and Sessions, and vests the same powers in the judge over them, [matters within the jurisdiction,] and that, therefore, that Court becomes superior in respect to those powers. But I think this is no test of superiority. The only power which a superior Court can legally exercise over any inferior or limited jurisdiction, except by way of appeal, is to keep it within the pale of circumvallation *drawn r^oqq around it; and within it the jurisdiction of a single magistrate is *- as omnipotent as the House of Peers in England. And the true distinc *516 tion between the Courts of superior and inferior jurisdiction, consists in the right of the superior to control the inferior, in the usurpation of power which may always be safely exercised where there is a limited jurisdiction, whether that limitation is confined to subjects of litigation' or persons.
It may be said, that pursuing this course of reasoning to an extreme, a jurisdiction might be thus created, treading so closely on the heels of the Courts of Sessions and Common Pleas, as to render it difficult to distinguish their footsteps. But so long as there is a jurisdiction possessing a controlling power over it, the judges of which are appointed in the manner prescribed by the constitution, the citizen has all the security which was deemed necessary, and which is provided by the Constitution ; and, for myself, I am unable to discover any provision in the Constitution which precludes the Legislature from providing by law, for a Court exercising unlimited jurisdiction, and for the mode of appointing a judge, so long as there is a jurisdiction to which it is subordinate ; and I think this view is fully supported by the powers exercised by the County Courts, in many cases their jurisdiction was unlimited, and if they might in one' instance encroach on the jurisdiction of the Common Pleas and Sessions, I see no point at which they might be arrested.
The objection to the illegality of the proceedings of the Court, on the ground that the sheriff was not constitutionally appointed, is not specifically pointed out by the briefs, and the only one urged at the bar, was that by the 6th article, 2d section, of the Constitution, it is provided that “sheriffs shall hold their offices for four'years, and not be again eligible for four years,” &c., and that the sheriff of this Court, by the by-laws, is elected every year, contrary to this provision of the Constitution. I do not see how this question can affect the case under consideration, in any *9401 VJGW- *sheriff is not otherwise necessary to a Court than to J execute its orders and its process ; he certainly has no participation in the judgment of the Court, and if there had been no sheriff, I see no reason why the Court would not be at liberty to pronounce its judgment. But giving the objection its full weight, it is equally unavailing. If the sheriff elect was disposed to insist on it,[1] it might become a question whether he was not entitled to hold it under this provision of the constitution for four years ; but no one, I think, will seriously doubt that be may not safely and constitutionally hold it for one.
The remaining question relates to the mode of proceeding.[2] The remedy prescribed by the act creating this offence, is by “ bill, plaint, or information.-”
There is no doubt about the principle, that when an act imposes a penalty, and points out the mode of proceeding, it must be pursued, and the only question is whether a bill of indictment is covered by the term bill in the Act ? Bill, as a generic term, would necessarily include it. But it is argued, that when used in an Act, it has a precise technical meaning, and is applied to a species of private proceeding in use in the Courts *517 of England, and the English authorities produced, would seem to justify this construction ; but that process,[1] so far as I can learn, has never been in use in this State, and certainly is not now, aud there is no other proceeding in the Court of Sessions, coming within the general term, bill, but an indictment, and there was no other to which it could apply, and it is a fair conclusion, that the Legislature did not intend it to be understood as mere idle verbiage. But if usage may be permitted to influence the construction of a term, there never was one better settled. From the passing of the Act, up to this day, the attorney-general and solicitors have uniformly prosecuted by indictment for this offence.
White and Be Saussure, for the motion. Hayne, Attorney-General, contra.
It is said, however, that it has been otherwise ruled by this Court, and cases have been referred to as decisive of the question. Were I satisfied that it was so, *however-reluctantly, I would readily yield my own r*o¿i opinion in conformity to the general principle which governs this Court, never to depart from its adjudications, except from the most imperious necessity, but the cases were decided at a time when the opinions of this Court were delivered ore terms, and were forgotten as soon as the occasion which gave rise to them had passed away, or preserved only by imperfect memoranda, hastily made, and probably remodeled from memory long after. I think, therefore, that the evidences of these decisions are too equivocal to justify the Court in departing from what I conceive to be law, sanctioned by the most inveterate usage, and indeed I cannot, by the utmost stretch of liberality, reconcile these supposed decisions with so uniform a practice, both anterior and subsequent.
ColcocK, Nott, and Huger, JJ., concurred.

 1783, 1 Stat. 99, §§ 4, 6; see 1784, 7 Stat. 101; 1791, 7 Stat. 107.

 7 Stat. 300.

 § 2.

 § 3.

 7 Stat. 319, § 1.

 Stat. 189.

 190.

 “$12.857 to $20.” This is a mistake, and the same is in 1 Brev. R. 44. It should "be, “from £20 currency, (equal to $12.2448) to $20.” See Act of 1747, P. L. 214, (referred to, 3 Stat. 699, but not found in any subsequent volume of the Statutes at Large;) Act of 1799, 7 Stat. 296, altered by Act of 1824, 6 Stat. 239; Cade v. Vaughn, 2 Rich. 53; note, 4 Rich. 552; post. 362.
A pound currency was one-seventh of a pound sterling; and in the province of South Carolina, where the Spanish milled dollar was estimated at four shillings and eight pence, the pound sterling was equal to $4.285714. Introduct. to Brev. Dig. p. xii.

 7 Stat. 291, clause 9.

 4 MoC. 68.

 1741, 3 Stat. 583, § 7; see also (post. 309,) 1785, 7 Stat. 236, & 53; 1801, 5 Stat. 399 ; 1825, 9 Stat. 504, § 23; 1842,11 Stat. 225 ; 1849,11 Stat. 557; Cheves, 220; 3 Hill, 188; 1 N. & MoC. 27; Grimke’s P. L. Appendix No. 2, p. 24; 2 Brev. 83, Cont.
*517 Note by his Nonor. — A manuscript report of the case of the State v. Sandifer,[2] was produced iu the argument of this case, and relied on by the defendant to establish the position that an indictment would not lie for this offence. Since the argument of the case, a copy of the opinion in that case, delivered by my brother Non, as the unanimous opinion of the Court, has been procured. It was brought up from Barnwell, and decided at. Columbia, in April, 1811, and was an indictment for retailing without a license, which was demurred to, and the cause assigned was, that an indictment would not lie for the offence. The demurrer was overruled, and Mr. Stark, who prosecuted that case, informs me that Sandi-fer was afterwards convicted on that indictment, and paid the penalty.

 See 1 N. & McC. 23.

 MS., noticed in 2 Rice’s Dig. 250, \ 3; but not in Brevard’s Reports, as they have been published.