EX PARTE LONNIE WILBARGER.

No. 1978. Decided February 21, 1900.

</div>

**1.  Constitutional Law—Acts of Legislature.**

Courts are not authorized to denounce an act of the Legislature unconstitutional and void unless it be clearly antagonized by some clause or clauses of the organic law which must inhibit the act by express provision or by clear and strong implication.

**2.  Same—Creation of Courts.**

Judiciary article, section 1, article 5, of the Constitution as amended in 1891, after defining the judicial power of the State and enumerating the courts comprising the judicial system, expressly declares that "the Legislature may establish such other courts as it may deem necessary," etc. Held, this gives the Legislature

complete authority to create "other courts" than those enumerated and prescribe their jurisdiction. Held, further, that jurisdiction of the enumerated courts not being made exclusive by the terms of the Constitution, "other courts" may be created and given concurrent jurisdiction with the courts named.

**3. Same—Corporation Courts.**

The Act of the Twenty-sixth Legislature creating a corporation court and authorizing cities, towns, and villages to adopt such courts, and giving such courts the same criminal jurisdiction as is conferred by the Constitution upon justices of the peace, is not violative of section 18 of article 5, Constitution, which limits the number of justices in a county, nor does it increase the number of justices of the peace in the county. The officer presiding over the corporation court is not a justice of the peace nor is the corporation court a justice court.

**4. Same.**

The fact that the Act of the Twenty-sixth Legislature, page 40, creating a corporation court for cities, towns, etc., vests jurisdiction in said courts in both State and municipal cases does not render the said act invalid.

**5. Same.**

The Act of the Twenty-sixth Legislature creating corporation courts for cities, towns, and villages is constitutional. BROOKS, Judge, concurs; DAVIDSON, Presiding Judge, dissents.

APPEAL from the County Court of Williamson. Tried below before Hon. W. F. ROBERTSON, County Judge.

Appeal from a judgment remanding relator to custody upon a hearing on writ of habeas corpus.

No statement necessary.

No brief for relator has come to the hands of the Reporter.

*W. H. Tarkington,* city attorney of Taylor; *Wm. P. Ellison,* city attorney of Dallas; *J. J. Collins,* assistant city attorney of Dallas, and *Rob't A. John,* Assistant Attorney-General, for respondent, filed a most able and elaborate brief and argument in support of the constitutionality of the Act of the Twenty-sixth Legislature creating corporation courts, which the Reporter regrets, owing to its length, can not be printed with this report of the case.

HENDERSON, JUDGE.—Appellant was convicted in the Corporation Court of Taylor—an incorporated city of Williamson County—of the offense of unlawfully carrying a pistol. He sued out a writ of habeas corpus before the county judge of said county, on the ground that the conviction was illegal, because the Legislature had no authority to create for said city of Taylor a State court; in other words, that the Act of the Twenty-sixth Legislature (page 40) entitled "An act to establish and create in each of the cities, towns and villages of this State a State court, to be known as the corporation court in such city, town or village, and prescribe the jurisdiction and organization thereof, and to abolish municipal courts," is unconstitutional. The agreed statement of facts concedes the proper organization of said court under said act. So we are confronted with the bald proposition, as to the constitutionality of the act creating "corporation courts." In Ex Parte Coombs, 38 Texas Criminal Reports, 648, the question here involved

was discussed in the opinion of the presiding judge of this court, and also in the concurring opinion of the writer. That decision, however, was before the passage of the Act of the Twenty-sixth Legislature, and was based on two propositions: First, whether municipal courts, as such, were a part of our judiciary system; second, whether the act incorporating the City Court of Dallas, which contained a section giving the city court jurisdiction of certain State offenses, was an act creating out of said municipal court a State court. The writer held in that case (and still adheres to the proposition) that the municipal court of Dallas was not an integral part of the judicial system, nor did the act incorporating the city of Dallas create a State court, or undertake to do so, out of the municipal court, but merely attempted to confer jurisdiction upon such municipal court. This was all that was before the court in that case, and all that was decided. But there are some propositions in the opinion in regard to our judiciary system, expressive of the views of the writer, not necessary to the discussion of that case, and which were merely dicta, and which I do not now consider correct.

The question involved in the disposition of this case is, does the Constitution authorize the creation of other courts than those named in the instrument itself? And, as a corollary to this, did the Legislature have authority to create the kind of courts named in the act, and clothe them with the jurisdiction with which such courts are invested? In discussing this question, I would here observe that there is no good reason or utility in bringing forward the Constitutions of this State prior to the Constitution of 1876, as amended in 1891. Former Constitutions would shed no light on the subject, and a decision of this case must rest alone on the proper interpretation of article 5 of our present Constitution. In treating the construction of this article, it will be taken for granted, and as axiomatic, that courts are not authorized to denounce an act of the Legislature as unconstitutional and void unless it is shown to be in violation of some provision of the Constitution. It is not enough that it be deemed unwise or against public policy. It must clearly be antagonized by some clause or clauses of the organic law. The instrument must inhibit the act by express provision, or else by clear and strong implication. Lytle v. Halff, 75 Texas, 128. As has been well said, "The Constitution of a State operates upon the lawmaking branch of the government purely as a limitation, and the Legislature exercises plenary power in the enactment of laws, except as such authority is expressly or by clear implication therein denied."

Section 1, article 5, being the amended judiciary article of 1891, reads as follows: "Section 1. The judicial power of this State shall be vested in one supreme court, in courts of civil appeals, in courts of criminal appeals, in district courts, in county courts, in commissioners courts, in courts of justice of the peace; and in such other courts as may be provided by law. The criminal district court of Galveston and and Harris counties shall continue with the district jurisdiction, and

organization now existing by law until otherwise provided by law. *The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto.*" (The amendment of the Constitution of 1876, so far as the question of the creative power of the Legislature is concerned, is italicized in the above quotation.)

Now, it is submitted, if the Constitution had not named any courts, but had merely authorized the Legislature, in general terms, to establish a judicial system for the trial of causes, etc., that the Legislature would have been fully authorized and empowered to create such system, in accordance with our form of government, as they might see fit. Harris County v. Stewart, 91 Texas, 133; State v. Helfrid, 2 Nott & McC., 233. But here the instrument is not silent. On the contrary, it speaks in the most emphatic terms, and gives to the Legislature as full and complete authority to create other courts (besides those named in the Constitution), conforming the jurisdiction thereof to the district and other inferior courts, as the English language is capable of conveying. If we look to the article in question, it names certain courts, and these do not require any creative act of the Legislature. They are constitutional tribunals,—made so by the instrument itself, and all that the Legislature has to do with regard to them is to prepare the way for their organization. Then they spring into being by virtue of the organic law, and immediately occupy the territory. Lytle v. Halff, supra. In addition, the Legislature is authorized to establish (i. e., create) "other courts," and prescribe the jurisdiction thereof, and conform the jurisdiction of the district and other inferior courts thereto. The one class of courts may be termed "constitutional courts," in contradistinction to the other class, which may be termed "statutory courts." But it will be observed that in all these tribunals—those created by the Legislature, as well as those brought into existence by the Constitution itself—that instrument vests jurisdiction in all of said courts, and the investiture is as complete in the one as in the other. Evidently it was never intended, by the use of the terms adopted, to authorize the Legislature to create the courts named in the Constitution. These already existed, and the language employed could only refer to some character of courts other than those named; and as to these the Legislature was given absolute authority in the premises, except that in the creation of such other courts the jurisdiction of the district and other inferior courts must be made to conform to them, and not these to the district and other inferior courts.

It is said, however, that other sections of the judiciary article hinder the creation of other courts than those named in the Constitution, because jurisdiction of all matters cognizable by courts is provided for and absorbed by courts created by the Constitution itself. But is it a sound proposition that, because jurisdiction over all matters cognizable in courts was vested by the judiciary article in the courts therein named, therefore the Legislature, under its power to create other

courts, could not create such other courts, and vest them with jurisdiction appertaining to the courts named by the Constitution. If exclusive jurisdiction had been vested by the Constitution in the courts named therein, a different question would be presented. Clepper v. State, 4 Texas, 242; 12 Am. and Eng. Enc. of Law (old ed.), p. 291, and authorities cited in note 2. When, however, the Constitution does not undertake to vest exclusive jurisdiction in the courts named, but leaves them flexible as to this matter, on what principle of construction can it be contended that other courts may not be created, and given concurrent jurisdiction with the courts named? The Constitution itself seems to have anticipated this, and to have provided for this very contingency, when it authorized the Legislature to conform the jurisdiction of the district and other inferior courts to the newly created courts. As was said in People v. Richmond (Colorado Supreme), 26 Pacific Reporter, 932, "The power to create other courts necessarily carries with it authority to give the courts created a share in the trial of controversies that would otherwise be disposed of by the tribunals expressly named." It will be observed that our Constitution, like the Constitution of the State of Colorado, vests the judicial power as well in the tribunals to be created by the Legislature as in those named by the Constitution.

It is especially urged in this connection that, as the Legislature by the act in question vested in corporation courts the same criminal jurisdiction pertaining to justice courts, the effect was to make them justice courts, and that, inasmuch as the Constitution (section 18, article 5) limited the number of justices of the peace in counties, consequently the act creating corporation courts is unconstitutional. If there were a clash between these provisions of the Constitution, it would be our duty to place such a construction on them as to reconcile them and permit both to stand, if we could. But it does not occur to me that these provisions of the Constitution are in antagonism. Nor do I deem it necessary to discuss whether or not there is a distinction between a justice of the peace and a justice court, and that the inhibition in said section 18 relates solely to the creation of other justices of the peace, and not against the creation of other justice courts, simply because it does not occur to me that the creation of other courts authorized by the Constitution, and investing such other courts with a part of the jurisdiction appertaining to justices of the peace, and which is also provided for in the Constitution, is the establishment or creation of another justice court. The argument that because the created court may exercise some, though not all, of the jurisdiction of a justice of the peace court, therefore the presiding officer of such court is a justice of the peace, and his court a justice court, if sound, would prove an absolute barrier against conferring concurrent jurisdiction as between the courts. If this proposition were correct, jurisdiction pertaining to justice courts could not be given to either district or county courts (which, as we have seen, is provided for in the Constitution) without making the officers of such

courts justices of the peace, and such courts justice courts. The justice court is not vested with exclusive jurisdiction, and therefore has no guaranty that its jurisdiction may not be invaded by investing concurrent jurisdiction in other courts. The most that can be said is that it can not be deprived of its constitutional jurisdiction. The cases of Bigby v. City of Tyler, 44 Texas, 351, and Holmes v. State, Id., 631, which are relied on by the appellee, are not in point on this question. Both of those cases were decided under the Constitution of 1869, which allowed only five justices of the peace in a county, and the attempt of the Legislature in each instance was to make the mayor of the city or town ex officio justice of the peace; that is, as I understand it, the Legislature undertook to name the mayor a justice of the peace, thus creating an additional justice of the peace, and clothing him with all the functions pertaining to that officer. Not so here, where the Legislature has merely clothed the judge of the corporation court with jurisdiction to try criminal cases concurrent with the justice court. I do not deem it necessary in this opinion to discuss the various features pertaining to justices of the peace and their courts, and those vested in corporation courts and the officers presiding over them. An inspection of the acts constituting the two tribunals will show a marked differential between them. Indeed, aside from some of the procedure, the only similitude between the two consists in the fact that corporation courts are given concurrent jurisdiction with the justice of the peace over State cases; and this would not constitute the officer presiding over corporation courts a justice of the peace, or the courts themselves justice courts.

The proposition advanced, that it was not competent for the Legislature to create of a municipal court a State court, or to combine the jurisdiction of the two—municipal and State—in the same tribunal, we do not think is well taken. The Constitution places no limitations as to the character of courts that the Legislature may create, except that it requires that the jurisdiction of the district and inferior courts must conform thereto; and we do not see how, if this provision is complied with, any sound reason can be suggested against the act of the Legislature, which, while creating a State court, also authorized that court to take jurisdiction of municipal cases. Those who hold the contrary should be able to point out the provision of the Constitution which prohibits such action on the part of the Legislature. State v. Helfrid, 2 Nott & McC., 233.

In support of the propositions involved in the decision of the questions herein presented, besides those referred to, we cite the following authorities, taken from the very able and exhaustive brief of appellee's counsel. On the proposition that only where a particular jurisdiction is given exclusively to a designated court by the Constitution, the Legislature is prohibited from conferring the same power on another court: Brown, Jur., p. 30, sec. 13; Perkins v. Corbin, 45 Ala., 118; Bors v. Preston, 111 U. S., 260, 4 Sup. Ct., 407, 28 L. Ed., 419; Ames

v. Kansas, 111 U. S., 467, 4 Sup. Ct., 437, 28 L. Ed., 482; Works, Courts and Jur., p. 68, sec. 17. On the proposition that the Legislature had authority to establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto: Ex Parte Lothrop, 118 U. S., 113, 6 Sup. Ct., 984, 30 L. Ed., 108; State v. Sullivan (Minn.), 69 N. W. Rep., 1094; Green v. Superior Court of San Francisco (Cal.), 21 Pac. Rep., 307; People v. Richmond (Colo. Sup.), 26 Pac. Rep., 929; Bors v. Preston, 111 U. S., 260, 4 Sup. Ct., 407, 28 L. Ed., 419; Ames v. Kansas, 111 U. S., 449, 4 Sup. Ct., 437, 28 L. Ed., 482; Perkins v. Corbin, 45 Ala., 118; Brown, Jur., 30; Works, Courts and Jur., p. 68.

In the view we take of this question, the Legislature, in the exercise of its constitutional powers, properly created corporation courts for cities, towns, and villages in this State, and authorized such cities, towns, and villages to adopt such courts. This was done by creative act, and not merely by attempting to confer jurisdiction upon municipal courts. Ex Parte Fagg, 38 Texas Crim. Rep., 573. And furthermore the act is in accord with the views expressed by the writer in regard to the creation of such courts. Ex Parte Coombs, 38 Texas Crim. Rep., 675.

We would not be understood as holding that every section of the act in question is constitutional. It has been suggested that section 8 of the act, authorizing county attorneys to prosecute in said courts (as they are empowered to do under section 21, article 5, of the Constitution), and further providing that they shall take nothing for their services, is in violation of said provision of the Constitution. And, again, the provision that all costs and fines imposed by said court shall be paid into the city treasury for the use and benefit of the city, it is contended, is also void, as against the Constitution. But concede this is true; still it would not invalidate the entire act, but the courts would stand notwithstanding the unconstitutionality of these provisions. Lytle v. Halff, 75 Texas, 128; Black, Const. Law, p. 64, sec. 44.

Entertaining the views hereinbefore expressed, we hold that the act creating the corporation courts for cities, towns, and villages is constitutional, and that appellant was convicted of the offense charged against him in a competent tribunal; and the judgment of the lower court is accordingly affirmed.

*Affirmed.*

BROOKS, JUDGE.—I concur in the conclusion reached in the foregoing opinion, and believe that the present Constitution, both before and after the amendment of 1891, contained ample express authority whereby the Legislature was authorized to create municipal courts, with authority to try offenses against State as well as municipal law, and will file my views at length later.

DAVIDSON, PRESIDING JUDGE.—I dissent from the conclusion reached by the majority of the court, and from the reasoning of Judge HENDERSON. I do not believe the act of the Twenty-sixth Legislature discussed by Judge HENDERSON is constitutional. If the Legislature has the authority to create and confer jurisdiction on the corporation courts mentioned in said act, then it had the same authority to confer jurisdiction on the corporation courts in existence before their repeal by said act. If a corporation court has ever existed in Texas, except by creative act of the Legislature, it has escaped my attention. The Constitution, prior to 1869, in one form or another expressly recognized corporation courts, and those corporation courts preceding the Constitution of 1866 were simply recognized as such by those Constitutions. In the Constitution of 1866 they were made an integral part of the State judiciary. But by none of those Constitutions were corporation courts created. They were simply recognized as Legislature courts. Those courts were brought into existence by virtue of the "creative power" of the Legislature, and not by the Constitution. Then it would follow that they were legislatively created courts. The corporation court authorized by the city charter of Dallas, and discussed in the Coombs case, 38 Texas Court Reports, 648, was the creature of the Legislature,—as much so as is the corporation court created by the Twenty-sixth Legislature. If the proposition is correct that the corporation courts of Texas, in all their history, were brought into existence by the "creative power" of the Legislature, and not by the Constitution, then it would necessarily follow that all the jurisdictional power they could exercise was "conferred" upon them by legislative enactment. This is as true in regard to the corporation courts in existence prior to the decision in the Coombs case as it is under the act of the Twenty-sixth Legislature; for in the last act the court was first created, and then its jurisdiction was conferred and defined. I do not understand how a legislative court can have any power "conferred" upon it until it has been first created or brought into existence. The conferring of power is an incident to its creation. Whether conferred in the same act or in subsequent acts would be immaterial. I know of no valid course of reasoning which could hold otherwise. Again, the corporation courts created under the act of the Twenty-sixth Legislature are as much an incident to the municipal corporation as were those created by the Legislature prior to that time. Neither under the prior Legislature nor under the act of the Twenty-sixth Legislature can said courts exist in the absence of the municipal corporation. Whenever the municipal corporation ceases to exist, the court will also cease to exist. The reading of the act itself demonstrates the truth of this statement. I agree to that portion of the opinion, however, which holds the two provisions mentioned by Judge HENDERSON unconstitutional. I deem it better to state this much, so as to hasten the disposition of the case, on account of the confusion which seems to be abroad in the State in regard to

the attitude of these corporation courts, and may later state the reasons for my dissent more fully. Believing the act unconstitutional, the judgment should have been reversed and the prosecution ordered dismissed.