## BEN PORTER v. THE STATE.

### No. 2870. Decided April 12, 1905.

**1.—Malicious Mischief—Constitutional Law—Special County Judge.**

The Constitution, section 16, article 5, authorizes the selection of a special county judge where he is disqualified, but has no reference to holding a term of the county court where the judge, from any cause, shall fail to attend; the statute, article 1132, Revised Civil Statutes, does provide for the election of a special county judge by the bar where he fails to attend. Held, the Constitution providing for the election of a special district judge, in the absence of some prohibitive provision with reference to county courts, would be no negation of authority on the part of the Legislature to provide for the election of a special county judge by the members of the bar; and this although the statute for such election requires no bond of such special judge.

**2.—Same—Statutes Construed—First Day of Court.**

Where the statute provides, "if at the time appointed to hold court, the judge shall not appear," etc., the words, "the time" are not necessarily tantamount to the entire first day, and an election of the special judge on the first day of the county court would not be without authority. Distinguishing Scott v. State, 68 S. W. Rep., 177.

### 3.—Information—Duplicitous Pleading.

Where in an information for malicious mischief, separate and distinct offenses are brought together in the same count, instead of pleading them in separate and distinct counts, the information is bad for duplicity.

### 4.—Same—Case Stated.

An information which charges defendant under article 799, Penal Code, with the offense of wounding a head of cattle of another within his enclosure, and then, after a comma, is followed with the allegation, "and the said P. did wilfully, unlawfully and wantonly maim, wound and cruelly and unmercifully beat and abuse one head of cattle, which seems to be a charge under article 787, Penal Code, is bad for duplicity.

### 5.—Same—Fact Case.

See facts which are held to be insufficient to sustain the charge of malicious mischief as set out in the information.

Appeal from the County Court of Milam.  Tried below before Hon. N. S. Hearrell, special judge.

Appeal from a conviction of a misdemeanor; penalty, a fine of $15.

The evidence of two children was that they had seen defendant standing, about the time charged in the information, inside of his field fence, and he had his gun leaning upon the fence, and he had something sticking in his pocket that looked like a piece of iron or chisel.  There was brush about there, and just before witnesses saw defendant, they saw prosecutor's cow running through the brush and against trees like she couldn't see and blood was running out of her eyes.  Witnesses spoke to defendant, but he did not speak to them.  They did not see him strike the cow.  Defendant had an insufficient fence.  The owner of the cow, and prosecutor in the case, testified that his cow stood out that night and when he found her next day lying down in the brush at the back of defendant's field, where the children said they saw her the evening before, she had gashes cut around her eyes that looked like they had been made by some sharp instrument.  He called on defendant and accused him with cutting his cow, and the latter denied it, but said he would have cut her if he could have caught her.  Another State's witness saw the defendant driving this and other cows the evening before prosecutor found her.  This witness did not speak to defendant then, but saw the cow next day and she was cut around the eyes; but he did not see defendant cut her, or do anything to her.  The defendant testified that he ran the cow with others out of his field; that he was mad enough to cut her, but did not touch her and had no gun and nothing but a monkeywrench in his pocket at the time the children saw him.

*Freeman & Morrison,* for appellant.—If the regular judge of a court fails to attend court for any reason on the first day of the term, there is no authority to elect a special judge to hold said court before the second day of the term of court.  Scott v. State, 68 S. W. Rep., 177.

Now, if the word *time* in article 1132b, means the same thing as the word *day* in article 1070, then unquestionably the meaning of one

statute is the same as the meaning of the other. The rule seems to be settled that the law takes no notice of fractions of a day, and to hold that the word *time* means at any particular hour of the first day of court, would be directly in the face of this rule.

It must also be borne in mind that the authority to elect a special judge depends entirely upon this statute, and if the statute does not confer the authority to elect the special judge on the first day of court, then the election is void, and such special judge would have no power to try the defendant in this case. Linhart v. State, 33 Texas Crim. Rep., 504; Burr v. Lewis, 6 Texas, 76; Lubbock v. Cook, 49 Texas, 96; Halbert v. San Saba, etc., 89 Texas, 230; Smith v. Dickey, 74 Texas, 61; Watkins v. Willis, 58 Texas, 521; State v. Asbury, 26 Texas, 83; Hill v. Kerr, 78 Texas, 213; Hammons v. State, 35 Texas Crim. Rep., 17. See word "Day," 8 Encyclopedia of Law, 2nd edition, page 737, et seq. Also word "Time," 28 Encyclopedia of Law, 2nd edition, page 211.

In considering section 16 of article 5 of the Constitution as amended in 1891, it seems extremely doubtful that the Legislature had the authority to pass the Act of 1897, especially article 1132b. That part of the section of the Constitution referred to reads as follows: "When the judge of the county court is disqualified in any case pending in the county court, the parties interested may by consent, appoint a proper person to try said cause, or upon their failing to do so, a competent person may be appointed to try the same in the court where it is pending, in such manner as may be prescribed by law." It will be seen that this provision of the Constitution limits the selection of a special judge to a case where the regular judge is *disqualified,* and then the special judge may be *appointed:* but there is no provision requiring or permitting the Legislature to provide for the *election* of a special judge. In carving out a complete judicial system for the State, the Constitution has established a county court, and provided for the election of a judge of such court and unless the Constitution delegates to the Legislature the authority to provide for the election of a special judge, the power of the Legislature admits of some doubt.

There is a noticeable difference in the provision of this section of the Constitution and those embodied in section 7, article 5, in reference to the authority conferred upon the Legislature in reference to providing for the holding of the district court. This provision in section 7 is as follows: "The Legislature shall also provide for the holding of district court where the judge thereof is absent, or for any cause, disabled or disqualified from presiding."

It will be seen that in section 16, no provision is made for an agreement on a special judge or on *appointment* of one, only in the contingency where the regular judge is *disqualified,* and no power is conferred upon the Legislature to provide for the election of one in any contingency: and when the Constitution has provided the contingency in which a special judge may be agreed upon or appointed, that, by

necessary implication, excludes every other method or contingency, the provision for which the Legislature was empowered to provide. Greer v. State, 65 S. W. Rep., 1075; Bank v. Fitzpatrick, 88 Texas, 213; Muench v. Oppenheimer, 86 id., 568.

On question of insufficient proof: Miller v. State, 42 S. W. Rep., 298; Davis v. State, 12 Texas Crim. App., 11.

On question of bad pleading: Dancy v. State, 35 Texas Crim. Rep., 615.

*Howard Martin*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of a misdemeanor, and prosecutes this appeal.

Appellant contends that this conviction cannot be maintained, because under the Constitution it was not competent for the Legislature to have authorized the election of a special judge to hold said county court. Article 1132b, Revised Civil Statutes provides, if at the time appointed to hold a county court the judge should not appear, members of the bar can elect a special judge to hold the term of court. The contention is that there is nothing in the Constitution which authorized this procedure; and that the only authority in the Constitution authorizing any one other than the regular county judge to sit, is to be found in section 16 of article 5 of the Constitution, the latter portion of which provides: "When the judge of the county court is disqualified in any case pending in the county court, the parties interested may by consent appoint a proper person to try said case, or upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law." It is further insisted that this being the sole provision authorizing some one else to sit as a judge and try the cases in the county court, and that with reference to district courts it being expressly provided, where a judge fails from any cause to attend at the term, the bar can select a special judge; that this constitutional provision, reinforces the idea that it was not intended to confer authority on the bar, where the judge failed to attend a meeting of the county court, to elect a special judge. We do not believe this contention is sound. The fact that the Constitution provides for the selection of a special judge in the district court, in the absence of some prohibitive provision with reference to county courts, would be no negation of authority. That is, before it could be held that the Legislature did not have the power to provide for the election of a special judge there must be found something in the Constitution with reference to county courts expressly, or by strong implication denying such authority. Ex parte Wilbarger, 41 Texas Crim. Rep., 514; Lytle v. Halff, 75 Texas, 128. As stated, the only clause of our Constitution authorizing the selection of a county judge is where the county judge is disqualified; it has no reference whatever to holding a term of the court where the

county judge, from any cause, shall fail to attend. This contingency not being provided for by the Constitution, we hold it was competent for the Legislature to authorize the selection of a special judge by the members of the bar. It is contended in this connection that the county judge is required to give bond, and no provision is found in the act with reference to a special judge requiring him to give bond. We hold that as to his qualifications reference might be had to the general act on the subject; at any rate, the failure to prescribe a bond would not invalidate his election.

It is further insisted that the election here of a special county judge was on the first day of the term, and that the act in question provides that, "if at the time appointed to hold court, the judge shall not appear," etc.; that "the time" is tantamount to the day, and the county judge would have all of the first day to put in an appearance, and consequently the election of the county judge on the first day was without authority of law. To support this instance we are referred to Scott v. State, 68 S. W. Rep., 177. In that case we held that the district judge had the entire first day to appear, and that the election on the second day would be authorized; but we pretermitted the question as to whether an election on the first day would be void. We do not believe that such election would be without authority of law. Of course, after the election, either on the first or second day, if the regular judge puts in an appearance, he would assume control of the court and oust the special judge of any further jurisdiction.

Appellant contends that the conviction here being under an alleged second count, the same cannot be maintained, because there is really no division of the information into counts. In order to present this matter we copy the charging portion of the information; after alleging time and venue as follows: "That one Porter, late of said county and State, was then and there the owner of cleared and cultivated land surrounded with an insufficient fence, and the said Ben Porter, did then and there unlawfully and wilfully, with a piece of iron, maim and wound, one head of cattle of Hockless Lester within such inclosure, and the said Ben Porter did unlawfully and wilfully and wantonly maim, wound and cruelly and unmercifully beat and abuse one head of cattle; and the said Ben Porter did unlawfully and wilfully and maliciously maim and wound one head of cattle, the same being then and there the property of Hockless Lester, with the intent then and there on the part of him, the said Ben Porter, to injure the said Hockless Lester, the owner thereof, contrary to the form of the statute," etc. The charge of the court submits only what is termed the second count of said information, to wit: "and the said Ben Porter did unlawfully and wilfully and wantonly maim, wound and cruelly and unmercifully beat and abuse one head of cattle." The doctrine of using separate counts to charge distinct phases of the same transaction, constituting separate offenses of the same character, is recognized by our statutes, and is commended in our decisions; but in alleging separate counts, some

degree of formality must be preserved. That is, the pleader, if he proposes to rely upon separate counts, must set them out in such distinct measure as that they appear to be separate and distinct counts. In Dancy v. State, 35 Texas Crim. Rep., 615, after citing authorities, we held to a degree of liberality, in referring from one count to another, or from one count back to the original beginning of the information or indictment, beyond the rule recognized at common law. But the rule adopted only extends to looking to other counts as to formal parts of the information, and not to those allegations which charge the offense itself. For instance, it has been held that the commencement and caption in an information or indictment, contained as a part of the first count, may be referred to and considered in aid of any count, as the same constitutes a part of the entire indictment. However, in all pleadings in which separate counts are used, with which we are familiar, these counts must appear separate and distinct. That is, there must be some formal commencement of each count. For instance, where the accusation is by indictment, it must be stated, "and the grand jurors aforesaid, upon their oaths aforesaid, do further present," etc.; and where it is by information, "and the county attorney further presents," etc. 1 Bishop New Criminal Procedure, section 429. It was never intended, even under our liberal system, that the counts should be conglomerated or run together in such manner as that they cannot be reasonably distinguished one from the other. Here we have what purports to be a count charging defendant under article 799, Penal Code, with the offense of wounding a head of cattle of another within his enclosure, and then we have a comma followed with the allegation, "and the said Ben Porter did unlawfully and wilfully and wantonly maim, wound and cruelly and unmercifully beat and abuse one head of cattle"; which seems to be a charge under article 787, Penal Code. But there is nothing to show it is a separate and distinct count, charging the same transaction in the form of another offense. On the contrary, the two statutes are brought together in the same count, and in our opinion, render the pleading duplicitous. While we commend the method of using different counts, in order to meet the varying phases of the proof, still, there must be conserved a due and orderly method of pleading. The counts must be set out with some degree of formality; certainly in such manner as to be distinguished the one from the other. We cannot hold to this loose method of pleading, but agree with appellant's contention that the information should be quashed.

Appellant further insists that the proof is insufficient to sustain the verdict. We have carefully examined the same; the case is one of circumstantial evidence, and we are inclined to believe appellant's contention in this respect is correct.

The judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*