

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable R. A. Weinert, Chairman
Civil Jurisprudence Committee
The Senate
Austin, Texas

Dear Sir:

Opinion No. 0-3407
Re: Constitutionality of House
Bill No. 465, as passed by
the House, Acts Forty-
Seventh Legislature.

Your written request dated April 15, 1941, requesting our written opinion concerning the constitutionality of House Bill No. 465 has been considered.

We copy the caption and Act attached to your request as follows:

"A BILL TO BE ENTITLED
AN ACT

"providing that in all counties in the State of Texas having County Courts at Law, the Judges of such Courts may act for the County Judge in probate or guardianship proceedings or matters, also in juvenile and lunacy cases; providing that any such act and judgment of any such Judge of the County Court at Law shall be valid and binding upon all parties the same as if rendered by the County Judge; providing that no additional compensation or salary shall be paid to the Judge of any such County Court at Law for such additional powers and duties conferred upon such Judges of the County Courts at Law by this act; providing this Act shall not apply to any county having a population of more than three hundred and fifty thousand (350,000), according to the last Federal Census; providing for the repealing of all laws and parts of laws in conflict with this Act; and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. That the Judge of any County Court at Law of this State may act for the County Judge of the county, during the absence, inability, or disqualification of the County Judge, in any probate or guardianship proceeding or matter, and also in any juvenile or lunacy

case, pending in such County Court at the time this Act
takes effect as well as any such proceeding or matter
or case thereafter instituted; and any such act or any
judgment rendered by any Judge of the County Court at
Law, while acting for the County Judge, shall be valid
and binding upon all parties to such proceeding or matter
and case the same as if performed by the County Judge.

"Section 2. The absence, inability or disqualifica-
tion of the County Judge to preside shall be certified
by the County Judge or by the Commissioners Court to the
Judge of any such County Court at Law, and upon such
certification, a copy of which shall be spread upon the
Minutes of the appropriate Court, the Judge of any such
County Court at Law shall be authorized and empowered to
sit and act in the place and stead of the County Judge,
and shall continue to so act until the absence, inability
or disqualification of the County Judge shall have
ceased to exist.

"Section 3. That notwithstanding the additional
powers and duties hereby conferred upon the Judges of
the County Courts at Law of this State, no additional
compensation or salary shall be paid to them, but the
compensation or salary of such Judges of the County
Courts at Law shall remain the same as now, or may be
hereafter, fixed by law; provided that this Act shall
not apply to any County having a population of more than
three hundred and fifty thousand (350,000) according to
the last Federal Census.

"Section 4. All laws and parts of law in conflict
with the provisions of this Act are hereby expressly repealed
to the extent of such conflict only.

"Section 5. The fact that the dockets of the various
County Courts in this State in counties in which there
are County Courts at Law, are crowded to such an extent
so as to cause delay in the trial of probate, juvenile, and
lunacy cases; and the fact that the method of appointing
or electing a special Judge to act for the County Judge,
as now provided by law, is inconvenient and expensive to
such counties, often causing delay in the trial of cases;
and the further fact that there is now no provision in
the law authorizing Judges of the County Courts at Law of
this State to act for the County Judge in such cases,
create an emergency and an imperative public necessity
that the Constitutional Rule requiring bills to be read
on three several days in each House be suspended, and
said Rule is hereby suspended, and that this Act shall take

effect and be in force from and after its passage, and
it is so enacted."

Some of the pertinent provisions of the Constitution of the
State of Texas to be considered in determining the constitutionality
of said House Bill No. 465 will be considered and discussed.

Article 5, Section 1, provides:

"Section 1.  The judicial power of this State shall
be vested in one . . . in County Courts. . . and in such
other courts as may be provided by law.

"The Legislature may establish such other courts as
it may deem necessary and prescribe the jurisdiction and
organization thereof, and may conform the jurisdiction of
the District and other inferior courts thereto."

Section 11 of the same Article of the Constitution provides:

"Section 11.  No judge shall sit in any case where-
in he may be interested, or where either of the parties
may be connected with him, either by affinity or consanguinity,
within such a degree as may be prescribed by law, or when
he shall have been counsel in the case. . . . .

" . . . . This disqualification of judges of inferior
tribunals shall be remedied and vacancies in their offices
filled as may be prescribed by law."

Section 15 of the same Article reads:

"Section 15.  There shall be established in each county
in this State a County Court, which shall be a court
of record; and there shall be elected in each county,
by the qualified voters, a County Judge, who shall be
well informed in the law of the State; shall be a
conservator of the peace, and shall hold his office
for two years, and until his successor shall be
elected and qualified.  He shall receive as a compensa-
tion for his services such fees and perquisites as
may be prescribed by law."

Section 16 of the same Article gives in detail the jurisdiction
of the county court: that provision in part also provides:

"Section 16 . . . . . When the judge of the County Court
is disqualified in any case pending in the County Court the
parties interested may, by consent, appoint a proper person
to try said case, or upon their failing to do so a competent

person may be appointed to try the same in the county
where it is pending in such manner as may be prescribed
by law." (Underscoring ours)

Section 22 of the same Act, likewise provides:

"Section 22. The Legislature shall have power, by
local or general law, to increase, diminish or change
the civil and criminal jurisdiction of County Courts;
and in cases of any such change of jurisdiction, the
Legislature shall also conform the jurisdiction of the
other courts to such change."

At present, Articles 1930 to 1934, inclusive, R. C. S., 1925,
provide for the selection or appointment of a Special Judge to act for
the County Judge where the latter is disqualified or incapacitated in
the manner therein provided.

The constitutionality of said Article 1934 was upheld in the
case of Porter vs. State, 48 Criminal Reports, 125, 86 S. W. 768. In
the same case the fact that no bond is required by the special judge
so elected was held to be immaterial to the validity of his appointment.

Article 1970, of Chapter 5 of Title 41, R. C. S., 1925, and as
amended, provides in detail for the creation and function of a County
Court at Law. It may be generally stated, without giving a detailed
analysis of each section, that the jurisdiction of such courts has been
limited to original and concurrent jurisdiction with the County Court
in all matters and causes both civil and criminal over which the regular
County Court would have jurisdiction except in probate matters, lunacy
matters and juvenile matters.

The Constitution does not mention or create a "County Court at
Law."

House Bill No. 465 appears to be an act to allow Judges of the
County Courts at Law, in certain counties, during the absence, inability
or disqualification of the regular County Judge to sit in his place and
perform his duties during the existence of such absence, inability or
disqualification.

Clearly the Legislature under Article 5, Sections 1 and 22 of
the Constitution of the State of Texas, has the power to create County
Courts at Law and confer upon them the original and concurrent juris-
diction, in civil and criminal matters, which the County Court has,
by terms of the Constitution (Article 5, Section 16). In the case of
State vs. Gillette's Estate, (Com. of App.) 10 S. W. (2d) 984, Judge
Critz said:

"We therefore conclude that section 22 of article 5
of the Constitution of this state, in so far as the probate

Honorable R. A. Weinert, page 5                    O-3407

jurisidiction of the  county court is concerned, speaks
exclusively as to the right of the Legislature to increase,
change, or diminish the jurisdiction of such courts as
prescribed and defined under section 16 of the same article,
and that said section 22 speaks exclusively as to the right
or power of the Legislature to conform the jurisdiction of
the district or other inferior courts to such change.  Section
22 limits the power of the Legislature in this respect to the
civil and criminal jurisdiction of the county courts.  It
therefore follows that any effort on the part of the Legis-
lature to increase, diminish or change the probate jurisdic-
tion of the county court of Eastland county, or to confer
such probate jurisdiction on any other court, would be void
as contrary to the fundamental law of the land."

If House Bill No. 465 purports to confer upon the County Courts
at Law, in certain counties, probate jurisdiction, then such act is
clearly unconstitutional under the holding in the Gillette's Estate case.

We believe, however, that the purpose of the Bill is to merely
provide that the Judges of the County Courts at Law, in certain counties,
should be able, in the instances specified in the Act, to sit for and
act for and in the place of the County Judge.  We now consider the
constitutionality of House Bill No. 465 in this manner.

Article 5, Section 16 of the Constitution specifically provides
that "when the Judge of the County Court in any case pending in the
County Court is disqualified the parties interested may by consent, ap-
point a proper person to try said case."  We do not find any provision
in House Bill 465 conforming the Act to the above provision of the
Constitution.  This provision of the Constitution is a special provision
applicable to County Courts and under the ruling in the Gillette's
Estate case, supra, we do not believe the Legislature has the power to
deprive litigants of matters pending in the County Court from being
allowed to appoint, by consent, some proper person to try such cause
where the County Judge is disqualified.  To this extent we are of the
opinion that House Bill No. 465 is in violation of the fundamental law
of the land and is to that extent unconstitutional.  As a suggestion,
we think the Bill should be changed so as to comply with the above
quoted provision of the Constitution so as not to deprive litigants in
the County Court of their constitutional right to appoint, by consent,
a proper person to try their litigation.

If the litigants or parties to the matter, pending in the County
Court, are unable or fail to agree upon the appointment of some proper
person to try their cause where the County Judge is disqualified, in
that instance Article 5, Section 16, also provides "or upon their fail-
ing to do so a competent person may be appointed to try the same in the
county where it is pending in such manner as may be prescribed by law."
We think this provision of the Constitution gives the Legislature the

power to provide for the appointment or selection of a competent person to try a cause, pending in the County Court, so long as such methods do not deprive the parties from being able to appoint, by consent, in case the County Judge is disqualified, some proper person to try said cause, which we have already discussed.

We find no specific constitutional limitation or prohibition upon a judge of a County Court at Law being authorized by the Legislature to serve, in case of the absence or inability or in instances where the parties interested in a matter fail to appoint, by consent, a proper person to try their matter in the place of and for the County Judge so long as such conditions exist, unless it can be said that the Judge of the County Court at Law in such instances is holding two civil offices of "emolument" so that the respective duties entailed by serving in each respective official capacity are incompatible.

Article 16, Section 40, of the Constitution of the State of Texas provides in part as follows:

"No person shall hold or exercise, at the same time, more than one civil office of emolument, . . . ."

We quote from 34 Texas Jurisprudence, pages 349 and 350:

"Emolument means a pecuniary profit, gain or advantage; hence the same person may hold two civil offices where no pay, compensation or pecuniary gain attached to one of them, provided they are not incompatible."

House Bill No. 465 expressly provides that no additional compensation shall be paid to such judges of County Courts at Law for the additional powers and duties imposed upon them. Clearly, then, the Act does not present a situation where the same person holds two "civil offices of emolument" and therefore does not violate Article 16, Section 40 of the Constitution. Porter vs. State (Crim. App.) 86 S.W. 767; Powell vs. Wilson, 16 Tex. 59.

We quote from the Porter vs. State case, in which the court construed the same constitutional provision, as follows:

"It is further insisted that this being the sole provision authorizing some one to sit as a judge and try the cases in the county court, and that with reference to district courts it being expressly provided, where a judge fails from any cause to attend at the term, the bar can select a special judge, this constitutional provision re-enforces the idea that it was not intended to confer authority on the bar, where the judge failed to attend a meeting of the county court, to elect a special judge. We do not believe this contention

is sound. The fact that the Constitution provides for the
selection of a special judge in the district court, in the
absence of some prohibitive provision with reference to
county courts, would be no negation of authority. That is,
before it could be held that the Legislature did not have
the power to provide for the election of a special judge,
there must be found something in the Constitution with
reference to county courts expressly or by strong implication
denying such authority. Ex parte Wilbarger, 41 Tex. Cr. R. 514,
55 S. W. 968; Lytle v. Halff, 75 Tex. 128, 12 S. W. 610.
As stated, the only clause of our Constitution authorizing
the selection of a county judge is where the county judge
is disqualified. It has no reference whatever to holding
a term of the court where the county judge, from any cause,
shall fail to attend. This contingency not being provided
for by the Constitution, we hold it was competent for the
Legislature to authorize the selection of a special judge
by the members of the bar. It is contended in this con-
nection that the county judge is required to give bond,
and no provision is found in the act with reference to a
special judge requiring him to give bond. We hold that,
as to his qualifications, reference might be had to the
general act on the subject. At any rate, the failure to
prescribe a bond would not invalidate his election."

We believe the holding in the Powell vs. Wilson case is per-
tinent, from which:

"The constitution (art. vi, sec. 26) declares that
'No person shall hold or exercise at the same time more
than one civil office of emolument, except that of
justice of the peace.' It is clear, therefore, that
two civil offices of emolument cannot be united in the
same person, unless one of them be that of justice of
the peace, which is specially excepted. But does it
follow that the same, or at least some of the same
duties may not be attached to two offices, to be ex-
ercised by the incumbents concurrently: or that the
duties of an office may not be to act as substitute for
another? We think not. There are instances in which
the same duty is attached to different offices, to be
exercised by the incumbents concurrently. Thus, to
several offices is attached the duty of being conserva-
tors of the peace; so also chief justices, judges of
the district courts, clerks and notaries public are
authorized to take the acknowledgment of deeds. These
are all civil offices of emolument, either created or
recognized by the constitution. Yet there can be no
objection to the incumbents having the same duty at-
tached to their respective offices. It does not con-
stitute them incumbents of more offices than one, or

subject them to the charge of holding or exercising two
or more offices at the same time.  Other instances might
be given, but these will suffice.

"Again, it cannot be doubted that it is competent
for the Legislature to create an office which shall be
that of a substitute or mere auxiliary to another, the
duties of which shall commence and consist in perform-
ing the duties of the principal office when the incum-
bent of that office is incapacitated to act.  In such
a case, the substitute would not be holding and exer-
cising two offices when performing the duties of the
principal office.  He would be simply exercising his
own office; for when called into exercise, its duties
are the duties of his office. . . . . . "  (Underscor-
ing ours)

The holding in the Powell case, supra, was approved in the case
of Jones vs. Alexander, (Com. of App.) 59 S. W. (2d) 1080.  We believe
House Bill No. 465, merely seeks to provide for a means of continuing
the business of the County Court, in the manner therein provided, at a
saving to the counties, without interruption, if possible, by providing
a means of selection of a competent person to act for and instead of the
County Judge where he is absent, or unable to perform his duties, or is
disqualified.  We believe the Act clearly comes within the holding in
the Powell case.

Neither do we believe the duties of the Judge of the County
Court and the Judge of the County Court at Law, under House Bill No. 465,
are incompatible.  We quote from 34 Texas Jurisprudence, page 351:

"Offices are incompatible where their duties are or
may be inconsistent or conflict, but not where their
duties are wholly unrelated, are in no manner inconsistent
and are never in conflict, and where neither officer
is accountable or under the dominion of, or subordinate
to, the other, or has any right or power to interfere
with the other in the performance of any duty."

Since the compensation for both the judges of the County Court
and the judges of the County Court at Law are to be compensated, by
law, by the respective counties which they serve, we do not believe
the provisions of Article 16, Section 33, are violated in considering
the constitutionality of House Bill No. 465.

Article 3, Section 56, of the Constitution provides in part as
follows:

"The Legislature shall not, except as otherwise pro-
vided in this Constitution, pass any local or special law,
authorizing:

"Regulating the affairs of counties, cities, towns, wards or school districts; creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;

"Regulating the practice or jurisdiction of or changing the rules of evidence in any judicial proceeding or inquiry before courts, justices of the peace . . . .

"And in all other cases where a general law can be made applicable no local or special law shall be enacted . . . . . . . . . ."

House Bill No. 465 applies to counties of less than three hundred and fifty thousand (350, 000) inhabitants according to the last Federal Census. A consideration of Article 1970, R. C. S., 1925, and as amended, shows that County Courts at Law have been created for several different counties of Texas. According to the last Federal Census, Dallas and Harris counties appear to be the only counties having over 350,000 inhabitants. We have been unable to find a Texas case passing upon this kind of population classification. It is rather difficult for us to find a reasonable basis for excepting from the provisions of House Bill No. 465, counties having over 350,000 inhabitants. Perhaps the large counties are not confronted with the same problems as counties with the lesser population insofar as the disposition of litigation in the County Court is concerned. Nor, perhaps are they faced with the same problems of economy. However, we believe there undoubtedly could be some logical basis for such classification. On this point we quote from Wood vs. Marfa Independent School District (Civ. App.) 123 S. W. (2d) 429:

"We recognize the principle that if the question of the reasonableness of the classification were debatable, the judgment of the Legislature would be final, but we may not close our eyes to what is clear to all men."

There is some doubt in our minds about House Bill No. 465 being constitutional, with regard to its classification being in contravention of Article 3, Section 56, of the Constitution. We are enclosing a copy of our opinion No. O-3247 which discusses in detail the cases on "bracket laws" and discussing what a reasonable classification is under the law. We believe the authorities therein cited will be helpful in passing upon this question.

Subject to the limitations heretofore discussed, it is our opinion and you are so advised, that House Bill No. 465, as passed by the House, Forty-seventh Legislature, is a constitutional act.

We trust that we have fully answered your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Harold McCracken

Harold McCracken
Assistant

HM:ej:wc

Encl.

APPROVED MAY 2, 1949
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

This Opinion Consider And Approved In Limited Conference